KEYES v. SCHARER

1. CONTRACTS—ASSIGNMENT—ACCEPTANCE OF BENEFITS—ASSUMPTION OF OBLIGATION.

An assignee by accepting an assignment does not necessarily assume performance of the unperformed obligations of his assignor under the assigned agreement.

2. SAME—ASSIGNMENT—ACCEPTANCE OF BENEFITS—ASSUMPTION OF OBLIGATIONS.

Where an assignee of a contract does not expressly assume its performance, it is a question of interpretation whether he has impliedly assumed its obligations upon accepting the assignment.

3. SAME—ASSIGNMENT—ACCEPTANCE OF BENEFITS—ASSUMPTION OF OBLIGATIONS—IMPLICATION.

The language of the assignment and the surrounding circumstances must be examined to determine whether there was an implied assumption of obligations by the assignee of a contract.

4. SAME—ASSIGNMENT—ACCEPTANCE OF BENEFITS—ASSUMPTION OF OBLIGATIONS—IMPLICATION.

Ruling by trial judge that defendant had accepted obligations as well as benefits when he accepted the assignment of a contract *held,* reversible error where the ruling was based on the erroneous assumption that by accepting the assignment, defendant had assumed the obligations as a matter of law, and where there were not sufficient findings of fact to support an implication of assumption of duties.

Appeal from Common Pleas Court of Detroit, Connolly (John W.), J. Submitted Division 1 April

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 6 Am Jur 2d, Assignments §§ 105, 109.

8, 1968, at Detroit.    (Docket No. 3,844.)    Decided
October 24, 1968.

Declaration by Freeman Keyes against Ray A.
Scharer to recover money due on a contract assigned
to defendant by a third party.    Judgment for plain-
tiff.    Defendant appeals.    Reversed and remanded.

*Monaghan, McCrone, Campbell & Crawmer* (*Pat-
rick A. McDonald,* of counsel), for plaintiff.

*Jones and Mehling,* for defendant.

LEVIN, J.    The question presented is whether the
defendant Ray A. Scharer, who accepted an assign-
ment of a contract without express assumption of
his assignor's unperformed obligations under the
contract, is obliged to pay and perform such un-
performed obligations of his assignor.

A written "Lease Agreement (with option to pur-
chase)" dated November, 1964, between the plain-
tiff, Freeman Keyes, as lessee, and J. W. Bramlett
and W. Van Gorp (hereinafter Bramlett-Van Gorp),
as lessors, stated that in exchange for plaintiff's
payment of $1,500 to Bramlett-Van Gorp the latter
leased to the plaintiff the "1965 breeding privileges
foal of 1966 of the mare Eau d'Or   *   *   *   live
foal guaranteed.    In the event Eau d'Or fails to pro-
duce live foal then [plaintiff] will deliver Eau d'Or
to [Bramlett-Van Gorp] in Louisville, Kentucky and
receive full refund of $1,500 upon delivery.    Cost
of shipping to be paid by [plaintiff]."    A veteri-
narian examined the mare in August, 1965, pro-
nounced her barren, and issued a certificate to that
effect in the latter part of that month.

On June 5, 1965, some 2 months before the mare
was so pronounced barren, she was transferred by

Bramlett to the defendant on the records of The Jockey Club.[1] The defendant testified the mare was transferred to him in part payment of indebtedness Bramlett owed him, and that 6 or 7 weeks after he received The Jockey Club certificate of registration Bramlett delivered to him a copy of the November, 1964, lease agreement between the plaintiff and Bramlett-Van Gorp.

On August 9, 1965, the defendant wrote to the plaintiff advising him that there had been assigned to the defendant, and he was now the owner of, "all rights" of Bramlett and Van Gorp in the mare and in the lease agreement; that under the terms of the lease agreement "each party has certain rights and obligations"; and that he, the defendant, would like to be advised of the present location of the mare, whether she was presently carrying a foal, her condition and insurance carried on her.

The plaintiff responded, stating the mare was barren, her condition good, where she was located, the insurance carried, and offering to return the mare pursuant to the November, 1964, lease agreement upon repayment of the $1,500 as in the lease agreement set forth.[2]

---

[1] At the time of transfer the mare was registered in the name of Bramlett on The Jockey Club records, and Van Gorp's interest, if any, did not appear on that record. Only Bramlett signed the lease agreement although both his and Van Gorp's names appear as lessors.

[2] Defendant did not reply to the plaintiff's letter.

In the fall of 1965 the defendant visited the farm where the mare was kept, and, according to the operator of the farm, stated "he was going to take over the *agreement*"; later: "he was going to take over this *mare* and might want me to keep her for him until he decided what he was going to do with her." (Emphasis supplied.)

In December, 1965, the plaintiff's attorney demanded that the defendant pay the $1,500, following which the defendant replied on December 21, 1965:

"As I explained to you on the phone, the lease agreement on the mare Eau d'Or between [Bramlett-Van Gorp] and [the plaintiff] was assigned to me by Mr. J. W. Bramlett in part payment of a

The defendant conceded on cross-examination that he expected the plaintiff to perform his obligations under the lease agreement, but denied he, the defendant, had agreed to assume the $1,500 obligation thereunder.

The trial judge, who sat without a jury, found for the plaintiff and a judgment for $1,629 was entered in his favor. No findings of fact were filed by the trial judge. Immediately before he made his decision the judge stated that he thought the law was that "if there was an assignment made you not only assume the benefits but you also assumed any obligations and you *cannot* have one without the other." (Emphasis supplied.) In denying defendant's motion for a new trial, the judge stated: "it is the opinion of this court that defendant's letter of November 11, 1964, was an effort on defendant's part to enforce this assignment." [No doubt the judge meant the letter of August 9, 1965.]

We read the trial judge's statements made just before he announced he would enter judgment for the plaintiff and in support of his denial of defendant's motion for a new trial to mean that by writing the August 9, 1965, letter the defendant accepted the assignment and that he was, therefore, liable as a matter of law to perform Bramlett-Van Gorp's unperformed obligations under the lease agreement,

goodly sum of money he owes to me. After talking with you I attempted to locate Mr. Bramlett to no avail.

"I took the assignment of the lease agreement covering the mare, Eau d'Or, in an effort to salvage some of the monies due from Mr. Bramlett, without first checking the mare out—I figured she was OK or Mr. Keyes, with his reputation, would not have taken her on in the first place. We also were led to believe the mare was in foal and had previously foaled, otherwise we would have made some exceptions, especially with regard to the return of the $1,500, which would only tend to add on that amount of the indebtedness.

"Now, since I checked the mare out I find that she apparently has never had a foal. The Jockey Club advises they do not have any record of her having any produce, although she was reported barren a couple of years after being bred."

because, as assignee, he could not seek to obtain the benefits of the lease agreement without thereby automatically assuming as well its burdens. We agree with the trial judge that the evidence shows the defendant accepted the assignment. However it does not necessarily follow as a matter of law that the defendant thereby assumed the unperformed obligations of his assignor under the lease.

On the contrary, the correct generalization is that neither the assignment of a contract nor acceptance by the assignee of such an assignment automatically casts upon the assignee the duty to perform the unperformed obligations owing thereunder by the assignor. The assignee may, of course, agree to assume such obligations. If an assignee does not expressly assume his assignor's obligations it becomes a question of interpretation whether he has impliedly agreed to assume such obligations.[3]

In deciding that question of interpretation we look to the language of the assignment and the surrounding circumstances. Here the assignment was oral. In his letter of August 9, 1965, to the plaintiff the defendant characterized such oral assignment as one making the defendant the owner of all Bramlett-Van Gorp rights in the mare and in the lease agreement.

The American Law Institute has declared a rule of presumptive interpretation to the effect that an assignment as an entirety of a bilateral contract wholly or partially executory on both sides will be interpreted, "in the absence of *circumstances* showing a contrary intention", as a delegation of the performance of the assignor's duties as well as an assignment of his rights, and the assignee's acceptance of the assignment as both an assent to become

---

[3] 6 Am Jur 2d, Assignments, § 109, pp 291–293; 3 Williston, Contracts, § 418A, pp 104–109; 4 Corbin, Contracts, § 906, pp 626–633.

assignee of the assignor's rights and a promise to perform his duties. Restatement, Contracts, § 164.

The uniform commercial code, which may well be applicable here,[4] adopts the approach of the American Law Institute,[5] except that the verbiage has been modified so that the presumption applies "unless the *language or the circumstances * * ** indicate the contrary." (Emphasis supplied.)[6]

The rule of presumptive interpretation adopted by the American Law Institute and enacted in the uniform commercial code makes sense for commercial transactions involving assignments, particularly

[4] The lease agreement contained an option entitling the plaintiff to purchase the mare, which option was exercisable even after the date Bramlett transferred the mare to the defendant. The uniform commercial code became effective in Michigan on January 1, 1964; the law of no other State has been claimed to be applicable. We make no ruling regarding the applicability of the uniform commercial code in this case.

[5] Recently the American Law Institute proposed to modify its statement to follow the language of the uniform commercial code; in recognition of *Langel* v. *Betz* (1928), 250 NY 159 (164 NE 890), which considered and rejected Restatement, Contracts, § 164(2), the institute will declare in the Restatement, Second, Contracts, that it expresses no opinion whether the presumptive rule of interpretation applies to an assignment by a purchaser of his rights under a contract for the sale of land, thereby attempting to limit *Langel* v. *Betz* to its facts. Tentative draft No 3 of the Restatement, Second, Contracts, § 160 (which will supersede present § 164); 44th Annual Meeting, The American Law Institute, pp 386, 387 (1967) and preceding discussion.

[6] "An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract." CL 1948, § 440.2210(4), as added by PA 1962, No 174 (Stat Ann 1964 Rev § 19.2210[4]).

It appears from the defendant's own characterization of the assignment in his letter of August 9, 1965, that the assignment was of the contract or of all rights under the contract. Under the uniform commercial code and the modified proposed restatement rule, by accepting the assignment the defendant would be deemed to have promised to perform all his assignor's duties under the lease agreement unless "the language or the circumstances" indicate the contrary.

where it is the regular business of the assignee to render the incomplete performance. The reasonableness of the presumption is less apparent when it is sought to apply it to transactions where it is not the regular business of the assignee to render the kind of performance which the assignor contracted to perform.

As to a case such as the one here presented, unless the uniform commercial code's interpretive rule governs, we think Professor Corbin had in mind the sound view of the matter when he declared in this connection:

"Interpretation must depend chiefly upon the context and the surrounding circumstances. * * *

"The factual basis for the inference of a promise varies with each case; generalizations are perilous, and are to be used merely as guides to assist in the making of a reasonable inference. Sometimes, the matter may properly be determined by the subsequent conduct of the parties themselves." 4 Corbin on Contracts, § 906, pp 629, 631.[7]

In any event—whether the rule of presumptive interpretation applies or not—the question of interpretation presented is ordinarily more a question

---

[7] Compare *Daniels* v. *Parker* (1957), 209 Or 419 (306 P2d 735; *Chatham Pharmaceuticals, Inc.* v. *Angier Chemical Co., Inc.* (1964), 347 Mass 208 (196 NE2d 852); *Kreuger* v. *Campbell* (1933), 264 Mich 449; *People's Savings Bank* v. *Geistert* (1931), 253 Mich 694, 712.

Compare *Plaza Investment Company* v. *Abel* (1967), 8 Mich App 19, where a landlord's interest in land and a lease thereof was conveyed and assigned without express assumption of the landlord's obligations under the lease by the grantee-assignee. It was not there claimed at trial or argued on appeal that the grantee-assignee had as a matter of *contract* impliedly assumed his assignor's obligations; the case was decided on the basis of the law concerning the liability of one who takes a conveyance of the reversion and an assignment of a lease subject to a lease covenant (to repair) running with the land, and who thereby comes into privity of estate with the tenant. See Grismore, Is the assignee of a contract liable for the non-performance of delegated duties? 18 Mich L Rev 284, 292, 293 *et seq.* (1920).

of fact than of law.  Here the trial judge made no findings of fact and entered judgment in the mistaken belief that there was no need to interpret or appraise the language of assignment and the surrounding circumstances and the subsequent conduct of the parties because, so he erroneously thought, the defendant by accepting an assignment of rights under the lease agreement must, as a matter of law, thereby also have accepted its burdens.

We cannot review this case as a matter of law until the factual questions are resolved by the trial judge as questions of fact with supporting findings of fact.  Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.  If the remand hearing takes place before the same judge who tried this case, the record so far made may be treated as part of the record on such remand hearing, the parties to be given the opportunity to add to the record additional evidence pertaining to the issues in dispute.

Costs of this appeal to abide the event.

HOLBROOK, P. J., and PRATT, J., concurred.