624 P.2d 854

Daniel F. **NORTON** and Jacqueline T. Norton, husband and wife; Leo Crowley and Mary Ellen Crowley, husband and wife, Appellants,

v.

**FIRST FEDERAL SAVINGS**, a corporation, Appellee.

No. 14685.

Supreme Court of Arizona, In Banc.

Feb. 2, 1981.
Rehearing Denied March 3, 1981.

Leo Crowley, Flagstaff, for appellants.

Mangum, Wall, Stoops & Warden by Robert W. Warden, Flagstaff, for appellee.

GORDON, Justice:

Plaintiffs/appellants entered into agreements on July 21, 1974, to purchase from Clyde Hutcheson three subdivision lots in Pinecrest Terrace Unit Six in the City of Flagstaff. As required by city ordinance, Hutcheson had posted a performance bond on August 7, 1973, with First Federal Savings as surety, to guarantee construction of off-site improvements on these lots. Following several extensions granted Hutcheson to perform on the bond, plaintiffs filed a complaint against Hutcheson and the City of Flagstaff seeking damages and a writ of mandamus compelling the City of Flagstaff to complete the off-site improvements as

soon as possible. The Superior Court of Coconino County ordered the City to complete the improvements on or before June 15, 1977. The off-site improvements were finally completed in the summer of 1977.

On November 29, 1977, plaintiffs amended their complaint to add defendant/appellee First Federal Savings as a party. On May 2, 1978, plaintiffs filed a second amended complaint, Counts Four and Five of which sought damages from First Federal Savings due to Hutcheson's failure to complete the off-site improvements. Count Four alleged that plaintiffs were entitled to recover damages under the performance bond because they were third-party beneficiaries of the contract whereby First Federal agreed with Hutcheson to post such a bond. Count Five alleged that First Federal has assumed all obligations and damages owed by Hutcheson to plaintiffs by virtue of a November 4, 1976, assignment agreement. On July 8, 1978, partial summary judgment was entered in favor of First Federal Savings as to Counts Four and Five of plaintiffs' second amended complaint. It is from this partial summary judgment that plaintiffs now appeal.

We have jurisdiction pursuant to A.R.S. § 12–2101 B and Rule 19(e), 17A A.R.S., Rules of Civil Appellate Procedure. We affirm.

The Arizona rule is that in order for a person to recover as a third-party benefi-ciary of a contract, an intention to benefit that person must be indicated in the contract itself, *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534 (1956); *Basurto v. Utah Construction & Mining Company*, 15 Ariz.App. 35, 485 P.2d 859 (1971). The contemplated benefit must be both intentional and direct, *Irwin, supra, Treadway v. Western Cotton Oil Etc. Co.*, 40 Ariz. 125, 10 P.2d 371 (1932), and "it must definitely appear that the parties intend to recognize the third party as the primary party in interest," *Irwin, supra*, at 154, 302 P.2d at 538.

Plaintiffs have pointed to nothing in any contract between First Federal Savings and Hutcheson which demonstrates an intention to benefit them. Nor does any intent to benefit plaintiffs appear in the terms of the bond.[1] Rather, it appears from the record that plaintiffs' real contention is that they should be allowed to recover as third-party beneficiaries of the bond because the city's purpose in requiring performance bonds such as this one was to benefit purchasers of subdivision lots.

We have said that in the case of a bond given in compliance with a statute, the statute constitutes a part of the bond. *Employer's Liability Assur. Corp. v. Lunt*, 82 Ariz. 320, 313 P.2d 393 (1957). Plaintiff claims that the bond under consideration here was given in compliance with City of Flagstaff Ordinance 689[2] as mandated by A.R.S.

1. The bond posted by Hutcheson and First Federal Savings provides in essence:

"1. Clyde V. Hutcheson, as Principal, and First Federal Savings * * * as Surety, are held and firmly bound to the City of Flagstaff * * * in the sum of * * * $120,000 * * *.

"The condition of the above obligation is such, that whereas, the Code of the City of Flagstaff states it shall be unlawful for any person to make, build, construct, or remove [street improvements] without first having received a written permit from the City Engineer * * *; and

"Whereas, such Code requires said Principal to post bond to guarantee that the work will be done in accordance with the Permit * * *.

"The conditions of this bond are such, that if the above bounded Principal * * * shall faithfully and truly comply with the provisions of the work described below, to the satisfaction of the City of Flagstaff, then this obligation shall become null and void, otherwise it shall remain in full force and effect.

"The work to be performed is the completion of streets, sewers, water line and all other off-site improvements * on real property legally described as Lots 1–15, inclusive, PINECREST TERRACE UNIT SIX.

"* Contractor shall have eighteen months to complete said improvements."

        *    *    *    *    *    *

2. Flagstaff Municipal Ordinance 689 provides in Section III(B)(4)(b):

"It shall be the responsibility of the subdivider to construct all of the improvements in streets, alleys, or easements which is required by this Code. As a condition of approval by the City Council of any final plat located within the corporate limits of the City of Flagstaff, the subdivider shall furnish a Surety Company Bond, or other guarantee, or trust arrangement satisfactory to the Council to guarantee the

§ 9–463.01 C(8).[3] We see nothing in the language of either piece of legislation which indicates an intent to create rights in lot purchasers to recover damages from a surety company in the event off-site improvements are not completed in a timely fashion.

Plaintiffs contend that § 9–463.01 is "a counterpart to § 11–806.01," which authorizes counties to regulate subdivisions within their corporate limits. In *Transamerica Title Insurance Co. v. Cochise County*, the Court of Appeals said:

"The purpose of A.R.S. § 11–806.01 is to insure that consumers who purchase lots in residential developments are provided with adequate streets, utilities, drainage, and generally pleasant, healthy and livable surroundings." 26 Ariz.App. 323, 327, 548 P.2d 416, 420 (1976).

From this quoted language, plaintiffs argue that the purpose of § 11–806.01 is to protect subdivision lot purchasers, that because § 11–806.01 and § 9–463.01 are "almost identical," the purpose of § 9–463.01 must also be to protect lot purchasers, and that the bonds required by § 9–463.01 C(8) must therefore be intended to be for the benefit of lot purchasers.

We are not convinced by this logic, as A.R.S. § 9–463.01 was not effective until January 1, 1974, more than four months after the bond was posted, and could not be construed as a part of this bond. Municipal Planning Act, ch. 178, § 4, 1973 Ariz.Sess. Laws 1764 (A.R.S. § 9–461 *et seq.* (1977)).

Going to the merits of the argument, however, we note that there is a vast difference between identifying the broad purpose of an entire statutory scheme and holding that, because of such broad purpose, a benefitted group gains rights in contracts to which they are not parties. Assuming that the purpose of A.R.S. § 9–463.01 may be to insure that municipal subdivision lot buyers are provided with adequately improved lots, it does not follow that those lot buyers can sue for damages as third-party beneficiaries of performance bonds which may be required under subsection C(8) of that statute.

Finally, plaintiffs contend that off-site subdivision improvements could be constructed without posting a bond before any lots were sold because a bond is required only when a developer offers lots for sale before having completed off-site improvements. Thus, they argue, "the bond requirement can only be intended to protect the specific purchaser of lots in an unimproved subdivision." Assuming the accuracy of plaintiffs' premise, their conclusion is a nonsequitur.

Municipalities have their own separate and identifiable interests in requiring performance bonds such as that called for in Section III(B)(4)(b). If a subdivision developer failed to finish off-site improvements after selling the subdivision lots, any improvements completed thereafter would be accomplished by the city with city funds. Similarly, if the developer installed defective improvements and refused to correct the defects, any repairs or alterations would be undertaken by the city. Performance bonds which insure the proper completion of street, sewer and water utilities by subdivision developers protect the city from the necessity of spending its citizens' money to fulfill the developers' responsibilities.

The purpose of requiring a performance bond from a subdivision developer who sells unimproved lots would seem to be assurance that the required off-site improvements are completed. The bond posted here could be satisfied either by the devel-

---

construction of such improvements within a reasonable length of time." Flagstaff, Ariz., Subdivision Code § III(B)(4)(b) (1966) (Subdivision Code replaced by Flagstaff, Ariz., Code Tit. II, ch. 1 (1977)).

**3.** A.R.S. § 9–463.01 C(8) provides:

"C. By ordinance, the legislative body of any municipality shall:

\*   \*   \*   \*   \*   \*

"8. Require the posting of performance bonds, assurances or such other security as may be appropriate and necessary to assure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction."

oper's satisfactory construction of improvements or by payment to the City of Flagstaff of the predicted cost of that construction for the city's use in completing the improvements. Allowing private lot buyers to collect on the performance bond for damages they suffered due to untimely completion of improvements would frustrate the purpose of the bond by depleting the funds thereby provided for the city's construction of improvements.

It is obvious that plaintiffs also have an interest in having these improvements completed, but in the absence of wording in the statute and/or ordinance to the contrary, it would be unreasonable to conclude that protection of the City of Flagstaff's interests was not the primary purpose of the bond requirement.

■ We feel, therefore, that plaintiffs are third party beneficiaries of neither the performance bond nor a contract between First Federal Savings and Hutcheson to post such a bond. Therefore, the trial court was correct in granting summary judgment in favor of First Federal on Count Four of plaintiffs' second amended complaint.

Plaintiffs in Count Five of their second amended complaint seek damages from First Federal caused by the delay in completion of the off-site improvements. They argue that First Federal assumed Hutcheson's obligation to complete off-site improvements by November 1, 1974, pursuant to a November 4, 1976, assignment agreement and that First Federal is therefore liable for damages caused by the delay in their completion. Plaintiffs assert that the improvements were completed on approximately July 13, 1977.

Hutcheson's promise which plaintiffs contend First Federal assumed is contained in the escrow instructions covering the lot sale between Hutcheson and Crowleys:

"Seller agrees that he will, prior to 11–1–74, complete the grading of the streets so as to be passable to a passenger car and complete the installation of water & sewer lines so as to permit services to the residence which buyers contemplate may be constructed upon the above described lot."

Plaintiffs claim that First Federal assumed Hutcheson's above-quoted promise pursuant to Paragraph 8 of the November 4, 1976, assignment agreement, which states:

"8. This Agreement is intended to cover all interests and potential interests that HUTCHESON may hold in the properties which are the subject of this Agreement, regardless of whether there are pending sales of the property or active or inactive escrow accounts concerning the properties."

Properties involving plaintiffs which are the subject of the assignment agreement are described in exhibits to the agreement as follows:

"EXHIBIT 'A–4'

"(Pinecrest Subdivision)

"LOTS 1 thru 5 inclusive and LOTS 7 thru 15 inclusive of PINECREST TERRACE UNIT 6 according to Case 3 Map 74, Records of Coconino County."

"EXHIBIT 'B–6'

"All interests of Clyde V. Hutcheson arising from sale of lots 8 & 9, PINECREST TERRACE UNIT 6 according to Case 3 Map 74, Records of Coconino County, to Daniel F. Norton and Jacqueline T. Norton, Transamerica Title escrow # 05008781–6."

No reference was made in the assignment agreement to lot 6, Pinecrest Terrace Unit 6, which according to the record was conveyed to plaintiffs Crowley on August 1, 1974.

It is apparent that Paragraph 8 contains no express assumption of Hutcheson's duty to complete the off-site improvements by November 1, 1974. Indeed, it would have been impossible at the time of the assignment agreement to perform Hutcheson's promise to complete the off-site improvements by a date two years earlier. Plaintiffs urge, however, that Paragraph 8 is a general assignment of Hutcheson's lot sales contracts with plaintiffs and, as such, operates as both an assignment of the rights

and a delegation of the duties under those contracts. Plaintiffs rely on the Restatement of Contracts for this interpretation.

We have stated, as a general principle, that an assignment of a contract does not operate to cast on the assignee liabilities imposed by the contract on the assignor. *Grant v. Harner*, 29 Ariz. 41, 239 P. 296 (1925). A review of cases from other jurisdictions discloses that many courts agree with this basic rule. *See Walker v. Phillips*, 205 Cal.App.2d 26, 22 Cal.Rptr. 727 (1962); *Keyes v. Scharer*, 14 Mich.App. 68, 165 N.W.2d 498 (1968); *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119 (Mo. 1979); *Shepard v. Commercial Credit Corp.*, 123 Vt. 106, 183 A.2d 525 (1962); *McGill v. Baker*, 147 Wash. 394, 266 P. 138 (1928).

A specific or express promise by the assignee to assume the assignor's obligations has been required by some courts before holding the assignee liable for the assignor's duties. *See Meyers v. Postal Finance Co.*, Minn., 287 N.W.2d 614 (1979); *Sillman v. Twentieth Century-Fox*, 3 N.Y.2d 395, 144 N.E.2d 387, 165 N.Y.S.2d 498 (1957); *Higgenbotham v. Topel*, 9 Wash.App. 254, 511 P.2d 1365 (1973). Other courts have held that a promise by the assignee to assume the assignor's obligations could be implied from the circumstances of the case. *See Walker, supra* (assignee's takeover of going business and acceptance of benefits under the assigned contract); *Central of Georgia Ry. v. Woolfolk Chem. Works*, 122 Ga.App. 789, 178 S.E.2d 710 (1970); (assignee partnership mere *pro forma* change of business entity of assignor corporation); *Senn, supra*; (assignee acting in fiduciary capacity to lot purchasers); *Massey-Ferguson Credit Corp. v. Brown*, 173 Mont. 253, 567 P.2d 440 (1977); (close relationship between assignor and assignee and assignee's participation in sale by assignor); *McGill, supra*; (assignment contained covenant made for benefit of obligee under assigned contract).

The Restatement of Contracts has gone even further and declared a rule of presumptive interpretation to the effect that, in the absence of circumstances showing a contrary intent, the accepted assignment of an executory bilateral contract operates both as an assignment of rights to and an assumption of obligations by the assignee. Restatement of Contracts § 164 (1932); *cf.* Restatement (Second) of Contracts § 160 (Tent. Draft No. 3, 1967). At least one court has adopted the Restatement's rule of presumptive interpretation. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973). It is this rule upon which plaintiffs rely to assert that Paragraph 8 of the assignment agreement operates as a general assignment of Hutcheson's lot sales contracts with plaintiffs.

The Restatement rule is explained in the Restatement (Second) tentative draft No. 3 as follows: "[A]n assignment of 'the contract' or of 'all my rights under the contract' or * * * similar general terms" is a delegation of the assignor's unperformed duties under the contract. Restatement (Second) of Contracts § 160(1) (Tent. Draft No. 3, 1967). *See* Restatement of Contracts § 164, Comment a at 206 (1932). Paragraph 8, quoted *supra*, contains no mention of *contracts*. It refers instead to interests in "*properties* which are the subject of this Agreement." [4] Even if the Restatement rule were adopted in Arizona, we do not believe it would operate to impose Hutcheson's duties under lot sales contracts upon the assignee of an assignment agreement which makes no reference to those contracts.

We have said that an assignment of a contract is subject to the same requisites for validity as are other contracts, *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 570 P.2d 769 (1977). Because we recognize the validity of implied contracts in Arizona, *see Arizona Bd. of Regents v. Arizona York Refrigeration*, 115 Ariz. 338, 565 P.2d 518 (1977), it would be logical for us to recognize an implied assumption of duties by an assignee. The circumstances of this case, however, do not require us to reach that question.

4. Those properties involving plaintiffs have been described *supra*.

As discussed above, the assignment agreement was entered into two years following the performance date under the lot sales contracts. The assignment was of interests in plaintiffs Norton's real estate lots, among other properties, not of Hutcheson's contracts for the sale of those lots. In addition, the preface to the assignment agreement between Hutcheson and First Federal recites that on November 4, 1976, Hutcheson owned various parcels of real property subject to realty mortgages or deeds of trust held by First Federal, substantially all of which were in default. By the assignment agreement, Hutcheson conveyed his interests in plaintiffs' lots, as well as other properties, to First Federal in lieu of foreclosure of those security interests. "Presumably there is no assumption of duties when the assignment is as security only." 4 A. Corbin, Contracts § 906, at 631 (1951); see Treadway v. Western Cotton Oil Etc. Co., 40 Ariz. 125, 10 P.2d 371 (1932); Restatement (Second) of Contracts § 160 (Tent. Draft No. 3, 1967). It would follow that no assumption of duties should be imposed when an assignment is in lieu of foreclosure of security interests. We feel that these circumstances would militate against finding an implied assumption of duties.

Plaintiffs also claim that First Federal's assumption of contract obligations can be implied by its conduct in that it completed the off-site improvements after the assignment was made. The record before us discloses, however, that First Federal completed the off-site improvements in lieu of forfeiting the $120,000 bond guaranteeing their construction which they had given as surety to the City of Flagstaff. First Federal's completion of off-site improvements was not in response to the assignment agreement but in satisfaction of its obligation to the City of Flagstaff under the performance bond discussed *supra*.

We hold, therefore, that First Federal did not assume Hutcheson's promise to plaintiffs to complete off-site improvements on their lots by November 1, 1974, pursuant to its November 4, 1976, assignment agreement with Hutcheson.

The trial court's summary judgment granted in favor of First Federal on this Count was also correct. Although partial summary judgment was also granted as to Counts Two and Three of the second amended complaint, plaintiffs are not left without a remedy. Counts One and Six remain as possible sources of recovery. Hutcheson's liabilities under his contracts with plaintiffs are not absolved by his November 1976 assignment to First Federal. Even if Hutcheson had effectively assigned his duties under his contracts with plaintiffs to First Federal, it is generally accepted that the delegation of performance under a contract neither extinguishes the delegator's duty to perform nor prevents recovery of damages for failure to perform. *See* Restatement of Contracts § 160(4) (1932); Corbin, *supra*, § 866. In addition, the evidence at trial may be sufficient to warrant granting judgment under Count Six for improper construction of off-site improvements.

It is also worth noting that, as a general rule, even if an assignee is not affirmatively liable for nonperformance of an assignor's duties under an assigned contract, an assignee takes subject to defenses against his assignor. Corbin, *supra*, § 892; see Restatement of Contracts § 167 (1932). This rule would be applicable to First Federal's counterclaim against plaintiffs Norton to cancel their lot sales contracts or for judgment for the full purchase price.

We affirm the partial summary judgment in favor of First Federal Savings on Counts Four and Five of plaintiffs' second amended complaint.

HOLOHAN, V. C. J., concurs.

Note: Justice James Duke Cameron did not participate in the determination of this case.

HAYS, Justice, concurring:

We should not dodge the issue of whether implied assumption is the law in Arizona but should meet that issue head-on. We should assert that the assignment of a con-

tract must be scrutinized to determine if the facts and circumstances warrant the implication that the duties and obligations of the assignor under the contract are imposed on the assignee along with the benefits.

Under circumstances where the assignee has a security interest in the property which is the prime subject matter of the assigned contract, which security interest is in default and actually assignee gets little more under the contract assignment than he would get under a foreclosure proceeding, it would not be appropriate to imply his assumption of the obligations and duties of the assignor. The recital in the subject assignment contract and the depositions and documents in the record support the conclusion that such is the situation here. I therefore concur in the result.

STRUCKMEYER, Chief Justice, dissenting.

Since I believe the holding of the majority on assignments of contracts is an anachronism which will lead to mischievous and undesirable results, I dissent.

We have held:

" * * * that where not bound by previous decisions of this court or legislative enactments we will follow the Restatement of the Law." *Ingalls v. Neidlinger*, 70 Ariz. 40, 46, 216 P.2d 387 (1950).

The Restatement of Contracts § 164 provides:

"(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

(2) Acceptance by the assignee of such an assignment is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties."

*See also* 3 Williston, Contracts § 418A, p. 104 (3rd ed.), and 4 Corbin, Contracts, Ch. 50, § 906, p. 626 et seq. (1951 ed.). Corbin, for example, says with regard to the assignment of bilateral contracts:

"In such a case, the American Law Institute has laid down a rule of presumptive interpretation, to the effect that the assignor is presumed to have delegated performance of his duties to the assignee, and that the assignee is presumed to have promised to perform them. This seems reasonable; and it is supported by a number of decisions." *Id.* at 629.

Moreover, the holding rejecting the rule of the Restatement is inconsistent with the philosophy, if not the language, of the Uniform Commercial Code, A.R.S. § 44–2317(D), providing:

"An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract."

The majority state: "The assignment was of interests in plaintiffs Norton's real estate lots, among other properties, not of Hutcheson's contracts for the sale of those lots." This statement no doubt will surprise First Federal, since its counsel wrote a letter to the Nortons, dated July 22, 1977, saying:

"In November of 1976, First Federal Savings entered into an agreement with Clyde Hutcheson wherein Clyde Hutcheson deeded all of his interest in the Pinecrest subdivision to First Federal Savings and also Clyde Hutcheson assigned any and all of his rights under the contract for sale between you and Mr. Hutcheson to First Federal Savings."

Further, the majority say: "Even if the Restatement rule were adopted in Arizona,

we do not believe it would operate to impose Hutcheson's duties under lot sales contracts upon the assignee of an assignment agreement which makes no reference to those contracts." But paragraph 3 of the agreement between Hutcheson and First Federal says:

> "3. Hutcheson covenants and agrees to execute and deliver to FIRST FEDERAL forthwith upon the execution of this Agreement, Deeds and Assignments conveying any and all of HUTCHESON'S interest in and to those certain properties set forth in Exhibit 'B' from HUTCHESON to FIRST FEDERAL."

One of the interests in Exhibit "B" is: "All interests of Clyde V. Hutcheson arising from the sale of lots 8 & 9, * * * to Daniel F. Norton and Jacqueline T. Norton, Transamerica Title escrow # 05008781-6."

Inasmuch as the deeds were placed in escrow for delivery upon payment of the purchase price, Hutcheson's interests were the right to receive payments or to have the deeds returned to him.

I would hold that when First Federal Savings accepted an assignment from Hutcheson of the benefits of his lot sales agreements, it accepted the burdens which go with the agreements. Any other holding permits the assignee of a contract to take the benefits of the assignor's bargain with lot purchasers without the legal compulsion of performing the assignor's promises. In this case, First Federal was compelled to complete the street and other off-premises improvements, such as water and sewerage, only because it had entered into a bond guaranteeing that Hutcheson would complete the off-site improvements. However, for 18 months First Federal delayed performance on the bond, constructing the improvements at its convenience and in disregard of the time limits set in the sales contracts to the detriment and injury of the lot purchasers.