In re MORTGAGES LTD., Debtor.

National Retail Development Partners I, LLC, Plaintiff,

v.

Alan J. Maness, et al., Defendants.

PDG Los Arcos, LLC, an Arizona limited liability company, Plaintiff,

v.

Robert M. Adams, et al., Defendants.

Bankruptcy No. 2:08–bk–07465. Adversary Nos. 2:08–ap–00780–RJH, 2:08–ap–00781–RJH.

United States Bankruptcy Court, D. Arizona.

May 19, 2009.

---

Michael C. Blair, Esq., Baird, Williams & Greer, for Plaintiff.

Robert J. Odson, Esq., Jennifer Nassiri, Esq., DLP Piper LLP (US), Daxton R. Watson, Esq., Mack Brucker & Watson PLLC, for Defendants.

Keith L. Hendricks, Esq., Fennemore Craig PC, for Official Committee of Investors.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is whether, under Arizona law, a bare assignment of a contract implies an assumption of duties. The Court concludes that it does not, at least in the circumstance where the assignment is for purposes of financing, and therefore grants the defendants' motion to dismiss.

### Factual and Procedural Background

Mortgages Ltd. was in the business of making "hard money" commercial loans of money raised from its investors. In fact, it is alleged to hold the State's oldest mortgage brokerage license. Unfortunately it continued to make such loans even after a serious decline in Arizona's real estate market and ultimately committed to more loans than it could fund. Its CEO, the son of the founder, committed suicide in June, 2008, and an involuntary bankruptcy petition was filed within a couple of weeks thereafter. In its currently pending Chapter 11 case there are close to $1 billion in outstanding loans but less than 10% of them are performing.

Two of its loan commitments were a $26 million construction loan agreement with plaintiff PDG Los Arcos, LLC ("PDG") and a $10 million construction loan agreement with plaintiff National Retail Development Partners, LLC ("NRDP") in June and August of 2007, respectively. The loans were both documented with loan agreements, promissory notes, deeds of trust, guarantees and other documents.

For months after the loan agreements were made, Mortgages Ltd. sold investments in the loans to raise the money to fund them. These investments were sold pursuant to private offering memoranda that described Pass Through Loan Participations. In both cases there was a Promissory Note Indorsement and an Assignment of Beneficial Interest Under Deed of Trust assigning fractional interests in the notes and deeds of trust, some as small as 0.004%, to numerous investors who are the defendants in these adversary proceedings. And, in addition to the endorsement of

fractional interests in the promissory note and its security, in each case there was also an Assignment stating that "Assignor [Mortgages Ltd.] hereby assigns to Assignee the above-referenced interest in the following documents," which included the Construction Loan Agreement.

The loans were not fully funded by the time of the Mortgages Ltd. bankruptcy. The PDG loan had only been funded to the extent of approximately 50%, and the NRDP loan had been 90% funded. A few months after the bankruptcy NRDP and PDG filed suit against the investor/assignees, alleging that the investors were liable under the assignment of the construction loan agreement to fully fund the loan. The complaints assert that "each defendant [investor/assignee] took an assignment of a proportional interest in the construction loan agreement and the associated loan documents and assumed a proportionate share of the rights and obligations under the various loan documents association with the construction loan."

Defendants removed the cases to bankruptcy court and have filed motions to dismiss. The motions contend that the complaints fail to satisfy the pleading requirements to state a claim that defendants were delegated or assumed any duty to fund the loans, and that a mere assignment of a contract does not include or imply a delegation of duties.

### Arizona Has Precedent Contrary to the Restatement's Rule of Implied Delegation.

The parties agree the issue is governed by Arizona law. Plaintiff contends this court should predict that Arizona would follow the rule of the Restatement (Second) of Contracts § 328, which provides that an assignment of a contract presumptively implies a delegation of its duties

(1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

(2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

The parties also agree that "Arizona courts look to the Restatement for guidance in the absence of controlling authority" to the contrary.[1] The first issue, therefore, is whether there is controlling authority to the contrary.

In 1925, the Arizona Supreme Court adopted "a general principle that the assignment [of a contract] does not have any such effect" of casting "on the assignee the liabilities imposed by the contract on the assignor."[2] One stated reason for this rule was that the assignment cannot have the effect of creating a new liability on the part of the assignee to the other party to

---

1. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 165 P.3d 173, 179 (Ct.App. 2007). *Accord, In re Krohn*, 203 Ariz. 205, 52 P.3d 774, 779 (2002)("where not bound by [our] previous decisions or by legislative enactment, [we] would follow the Restatement of the Law," quoting *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 302–03, 162 P.2d 133, 137 (1945)).

2. *Grant v. Harner*, 29 Ariz. 41, 239 P. 296, 296–97 (1925).

the contract "because the assignment does not bring them together, and consequently there cannot be the meeting of minds essential to the formation of a contract."[3]

In 1981, the Arizona Supreme Court reiterated that *Grant* established this "general principle."[4] While that opinion in *Norton* suggested that "it would be logical for us to recognize an implied assumption of duties by an assignee," the opinion made very clear that "[t]he circumstances of this case, however, do not require us to reach that question."[5] Indeed, the opinion was unequivocal that it was not thereby adopting the Restatement rule by its use of the counterfactual or hypothetical subjunctive tense in noting that "Even if the Restatement rule were adopted in Arizona," it would not apply to the facts before the court where the assignment of interests in real property "makes no reference" to an assignment of contracts.[6]

■ Because *Norton* did not adopt the Restatement rule and *Grant* is controlling precedent in which the State's highest court adopted the contrary rule, this Court is bound by the rule of *Grant* that an assignment alone does not imply a delegation or assumption of duties. Given the precedent of *Grant,* the Court cannot conclude that an assignment of a contract operates to cast on the assignee the assignor's liabilities.

## Plaintiffs Are Not Third Party Beneficiaries of the Assignments.

■ This conclusion is further bolstered by another principle applied in *Norton* where the court did not even suggest it might be "logical" to adopt the contrary Restatement rule. The analysis in *Norton* began with reference to the well-established "Arizona rule" that "for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the contract itself."[7] That "Arizona rule" independently bars the plaintiffs' claim here because they are not parties to the assignments between Mortgages Ltd. and its investors. At best, they could only claim to be third party beneficiaries of those assignments. But there is nothing in those assignments that indicates an intent to directly benefit the borrowers such as PDG and NRDP.

Although the second part of the Restatement rule establishes a special third party beneficiary rule for the context of contract assignments, it is not a necessary part of the first part of the Restatement rule that an assignment of rights implies a delegation of duties. That rule of implied delegation, for example, could have application in a suit by the assignor against the assignee for the assignee's failure to perform the obligations due the other party to the underlying contract. Such a suit could be decided by application of the first part of

---

3. *Id.* at 297.

4. *Norton v. First Fed. Sav.,* 128 Ariz. 176, 624 P.2d 854, 859 (1981)("We have stated, as a general principle, that an assignment of a contract does not operate to cast on the assignee liabilities imposed by the contract on the assignor. *Grant v. Harner,* 29 Ariz. 41, 239 P. 296 (1925). A review of cases from other jurisdictions discloses that many courts agree with this basic rule.").

5. *Norton,* at 859.

6. *Id.*

7. *Id.* at 856, citing *Irwin v. Murphey,* 81 Ariz. 148, 302 P.2d 534 (1956). "The contemplated benefit must be both intentional and direct, *Irwin, supra, Treadway v. Western Cotton Oil Etc. Co.,* 40 Ariz. 125, 10 P.2d 371 (1932), and 'it must definitely appear that the parties intend to recognize the third party as the primary party in interest.' " *Norton,* at 856, citing *Irwin,* 302 P.2d at 538.

the Restatement rule and would not involve the second, special rule on third party beneficiary rights.

■ When the suit is brought by the other party to the contract, however, it must establish *both* that the assignment implied a delegation of duties and that it is entitled to enforce such rights arising from the assignment to which it was not a party, *i.e.*, that it has the rights of a third party beneficiary. While the hypothetical discussion in *Norton* suggested it might be "logical" for Arizona courts to adopt the implied delegation of duties it does not suggest, or even consider, whether it would also be logical to overrule Arizona's long-standing rule governing third party beneficiaries.

### The Assignment for Financing Negates an Implied Delegation of Duties.

■ Even if this Court were to conclude that Arizona would follow the Restatement of Contracts § 328, this would not imply a delegation of duties under the factual circumstances presented by the complaint. The Restatement rule indicates that an "assignment for security" is an example of "circumstances" that "indicate the contrary," *i.e.*, that the assignment did not imply a delegation of duties. Here, it is undisputed that the purpose of the assignments to the investors was to raise the funds with which to fund the loans.

It could be argued that the assignments to the pass through investors were not assignments "for security" because they were intended to become the owners of the fractional interests in the notes rather than lenders secured by security interests in those notes. But the Court does not interpret the Restatement's term "assign-ment for security" to be so technically limited to a security interest but rather more generically to refer to any transaction intended to make the assignee's investment a secure one. Modern accounts receivable financing evolved from factoring in which the accounts were sold outright to the factor. It would not be logical to assume that the Restatement's language was intended to make a fine distinction between these two methods of documenting such financing. And an important policy underlying both the Restatement rule and Uniform Commercial Code § 9–404 [8] was to "not twist the 'precarious security' of an assignee into potential liability for this assignor's breach" because "by making the bank a surety, not only will accounts receivable financing be discouraged, but transaction costs will undoubtedly increase for everyone." [9]

Here, the transaction documents, especially the Private Offering Memoranda, make abundantly clear this was a financing transaction akin to the resale of collateralized debt obligations in the securities markets. It was not, for example, a purchase of the business of Mortgages Ltd. where the buyer intended to take over the lending business and with it the obligation to fund outstanding loan agreements. Consequently even if Arizona were to adopt the Restatement rule there would be no presumptive delegation of duties to the investors, and therefore the complaint fails adequately to plead any facts sufficient to state a claim by the borrower against the investors.

### Conclusion

For these three reasons, each of which would be sufficient in itself, the complaint fails to state a claim against the investors.

---

**8.** In Arizona, A.R.S. § 47–9404, formerly A.R.S. § 47–9318 (U.C.C. § 9–318).

**9.** *Michelin Tires (Canada) Ltd. v. First Nat'l Bank of Boston,* 666 F.2d 673, 678, 679 (1st Cir.1981).

The investors' motion to dismiss is therefore granted.