NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BOND SAFEGUARD INSURANCE COMPANY, an Illinois corporation,
*Plaintiff/Appellee,*

*v.*

SAN TAN BORGATA DEVELOPMENT, L.L.C., an Arizona limited
liability company; ADOBE DEVELOPMENT PARTNERS IV, L.L.C., an
Arizona limited liability company; ADOBE PARTNERS III, INC., an
Arizona corporation; LANGER ARIZONA, L.L.C., an Arizona limited
liability company; WILLIAM A. LANGER, JR., and LINDA M. LANGER,
as Trustees of the William and Linda Langer Family Trust; WILLIAM A.
LANGER, JR. and LINDA M. LANGER, husband and wife,
*Defendants/Appellants.*

No. 1 CA-CV 13-0558
FILED 09-23-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-010823 and CV2012-006770
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Jennings, Haug & Cunningham LLP, Phoenix
By Matthew H. Sloan and Emily K. Wilfinger
*Counsel for Plaintiff/Appellee*

Ducharme Law Firm, Scottsdale
By Wayne B. Ducharme
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

¶1　　　　San Tan Borgata Development, L.L.C., ("San Tan") Adobe Development Partners IV, L.L.C., Adobe Partners III, Inc., Langer Arizona, L.L.C., The William and Linda Langer Family Trust, William A. Langer, Jr., and Linda M. Langer (collectively "Indemnitors") appeal from the trial court's grant of summary judgment to Bond Safeguard Insurance Company ("Bond Safeguard") on its breach of contract claim. For the reasons discussed below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　This case involves a contract dispute in the context of a statutorily required subdivision performance bond.

¶3　　　　San Tan applied to Pinal County for approval of a subdivision plat it intended to develop into residential property. As a condition of final plat approval, Pinal County required San Tan to obtain a performance bond for construction and completion of improvements in the subdivision.

¶4　　　　San Tan contacted Bond Safeguard to obtain a performance bond for the subdivision improvements. As a condition of furnishing the bond, Bond Safeguard required Indemnitors to sign a General Agreement of Indemnity ("GAI"). Under the GAI, the Indemnitors agreed to indemnify and reimburse Bond Safeguard for the payment of any claims on the performance bond. The GAI also required Indemnitors to pay annual premiums until Bond Safeguard was discharged and released from any liability on the performance bond. Indemnitors signed the GAI, and Bond Safeguard furnished the performance bond to Pinal County on February 20, 2008.

2

¶5          From February 20, 2008 to February 20, 2010, San Tan paid the annual bond premiums.  However, the record before the superior court established that San Tan never developed the subdivision property and no lots were ever sold to consumers.  Additionally, San Tan lost ownership of the subdivision property in November 2010, when the property was foreclosed and sold at a trustee's sale to a third party.

¶6          Following the loss of the subdivision property, San Tan stopped paying the premiums to Bond Safeguard.  Bond Safeguard sent San Tan two invoices demanding payment of the premiums due for the period between February 20, 2010 and February 20, 2012.  When San Tan refused to pay the premiums, Bond Safeguard sent demands for payment to each of the other Indemnitors.  The Indemnitors also refused to pay the premiums, and Bond Safeguard filed a complaint alleging Indemnitors breached the GAI by failing to pay the required annual premiums.

¶7          Indemnitors answered the complaint asserting that they were no longer required to pay premiums under the GAI because San Tan, the developer, no longer owned the subdivision property.   In addition, San Tan filed a counterclaim alleging Bond Safeguard's lawsuit violated its duty of good faith and fair dealing.  San Tan also sought a declaratory judgment settling the rights and other legal relations of San Tan and Bond Safeguard arising out of the GAI and the performance bond.

¶8          Bond Safeguard filed a motion for summary judgment arguing Indemnitors had breached the GAI.  San Tan filed a cross-motion for summary judgment arguing it was not liable for premiums under the GAI because it had cancelled the performance bond.  More specifically, San Tan asserted that it had cancelled the performance bond based on the fact that it no longer owned the subdivision property, and that at the time of the trustee's sale no lots had been sold in the subdivision and no construction had begun on the subdivision improvements.

¶9          Before ruling on the cross-motions for summary judgment, the court granted San Tan's request to consolidate the matter with a related lawsuit San Tan had filed against Pinal County.[1]  In its response,

---

[1]     San Tan's lawsuit against Pinal County sought declaratory relief that "its obligations in connection with the Subdivision [performance] bond were released when San Tan no longer owned [the] property, and

the County adopted Bond Safeguard's position that the performance bond could not be unilaterally cancelled by San Tan regardless of the foreclosure of the subdivision property. The County argued that it was statutorily bound to maintain the performance bond as a financial assurance until construction of the improvements was completed.

**¶10** On February 28, 2013, the court issued a minute entry order finding that Indemnitors breached the GAI by refusing to pay the annual premiums from February 2010 through February 2012. The court concluded that under the terms of the performance bond San Tan could not unilaterally cancel the bond; rather, the bond remained in full force and effect until either San Tan completed the improvements or the County released the bond. As a result, Indemnitors' contractual obligation to pay premiums under the GAI continued despite the fact San Tan no longer owned the subdivision property. However, finding it "inequitable to continue the status quo, both Bond Safeguard and [Indemnitors] dangling on the hook pending Pinal County's politically-charged decision" to call or release the bond, the court cancelled the bond as of February 28, 2013 (the date of its minute entry order). Indemnitors timely appealed.

## DISCUSSION

I.      Standard of Review

**¶11** "In reviewing the granting of a motion for summary judgment when no disputed issues of material fact exist, we will determine only whether the trial court correctly applied the law to the facts." *Norquip Rental Corp. v. Sky Steel Erectors, Inc.*, 175 Ariz. 199, 202, 854 P.2d 1185, 1188 (App. 1993).

**¶12** Neither Pinal County nor Bond Safeguard challenges on appeal the judgment equitably cancelling the performance bond and San Tan's liability under the GAI as of February 28, 2013. The only issue on appeal is whether the court erred in finding that Indemnitors breached the GAI by failing to make premium payments for the period from February 2010 to February 2012.

**¶13** Indemnitors concede that they failed to pay the subject premiums. Indemnitors argue, however, that their obligation to pay the premiums was cancelled by operation of law because (1) the subdivision

San Tan did not sell any lots in the Subdivision or start construction of any improvements."

property was sold to a third party at the trustee's sale, and (2) at the time of the trustee's sale no lots had been sold and San Tan had not started any construction in the subdivision. Indemnitors reason that the bond was cancelled on the date of the trustee's sale and, as a result, Indemnitors were no longer required to pay premiums under the GAI.

## II.     The Bond Was Not Discharged By Operation of Law

**¶14**         "The liability of a surety on a statutory bond . . . is measured by the terms of the statute requiring the bond." *Norquip*, 175 Ariz. at 202, 854 P.2d at 1188. When a bond is "given in compliance with a statute, the statute constitutes a part of the bond." *Norton v. First Fed. Sav.*, 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981). Where the terms of a bond conflict with the terms of the statute, "the statute rather than the wording of the instrument measure[s] the liability on statutory bonds." *Norquip*, 175 Ariz. at 204, 854 P.2d at 1190.

**¶15**         The performance bond in this case was issued pursuant to Arizona Revised Statutes ("A.R.S.") section 11-806.01 (2010) which authorizes the county board of supervisors to regulate land subdivision and to require performance bonds as may be appropriate and necessary to assure installation of required subdivision improvements. A.R.S. § 11-806.01 (A), (K). In compliance with A.R.S. § 11-806.01, the Pinal County Development Services Code states:

> In order to ensure the proper installation of all required improvements by the subdivider, assurances are required for street, sewer, electric and water utilities, drainage, flood control and other improvements meeting established minimum standards of design and construction.

Pinal County Development Services Code ("PCDSC") § 3.40.040 (A) (Code Publishing Co. 2009). To further the statutory purpose that the County be shielded from financial responsibility for defective or incomplete installation of improvements, the Code states:

> Assurances deposited to ensure installation of required improvements may be released, by the board, upon the completion of all improvements, submittal and acceptance of certified as-built Mylars, acceptance of the pavement finishing fee, posting of the 10 percent guarantee bond and acceptance of the improvement by board action.

PCDSC § 3.40.040 (F)(1).

¶16 Under the Code, Bond Safeguard's liability on the performance bond is contingent on San Tan's completion of the required subdivision improvements; liability is not based on whether San Tan maintains ownership or abandons the subdivision before any of the lots are sold or developed. Thus, the Code clearly provides that San Tan's failure to install the required improvements constitutes a default and allows the County to call the bond. PCDSC § 3.40.050 (A). "Upon subdivider's default, the board may, after reasonable notice to the subdivider of said default, declare the assurances forfeited and take whatever steps are within its power to require that compliance is met, and/or make claim to the forfeited securities." PCDSC § 3.40.050 (B).

¶17 Additionally, San Tan's ownership and/or abandonment of the subdivision are not material elements of Bond Safeguard's liability to the County under the terms of the bond. The bond unambiguously states that the Principal (San Tan) has agreed to construct the improvements, and the condition of Bond Safeguard's obligation to the County as a surety "is such, that if the above Principal shall well and truly perform said agreement . . . this obligation shall be void, otherwise it shall remain in full force and effect." Bond Safeguard is therefore exposed to liability on the bond if San Tan fails to complete the necessary improvements.

¶18 In sum, both the Code and the bond clearly state that Bond Safeguard's potential liability on the bond is contingent on San Tan's completion of the specified improvements, and not on whether San Tan owns or abandons the subdivision property. This comports with the purpose of a performance bond; "to protect the public from bearing the costs of necessary subdivision improvements by requiring the developer to install and pay for such improvements." *Ponderosa Fire Dist. v. Coconino Cnty.*, 1 CA-CV 13-0545, slip op. at *5, ¶ 26 (Ariz. App. Aug. 28, 2014); *Norton*, 128 Ariz. at 179-80, 624 P.2d at 857-58 (same). If, however, San Tan were permitted to unilaterally cancel the bond by selling, transferring or abandoning the subdivision property, then the County may be exposed to financial liability for necessary improvements, thereby nullifying the purpose of the performance bond requirement.

III. Premium Payments Required by the GAI

¶19 Interpretation of the terms of an indemnity contract presents a question of law we review de novo. *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, ¶ 10, 197 P.3d 758, 763 (App. 2008). We enforce an indemnity agreement "according to the language used by the parties." *Flood Control Dist. Of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29,

37, ¶ 16, 279 P.3d 1191, 1199 (App. 2012). "[T]he meaning of a contract must be determined by reading the instrument as a whole." *Tech. Constr., Inc. v. City of Kingman*, 229 Ariz. 564, 568, ¶ 10, 278 P.3d 906, 910 (App. 2012). "[W]here parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written." *Paloma*, 230 Ariz. at 38, ¶ 19, 279 P.3d at 1200. (internal citations omitted)

¶20        The language of the GAI is clear: Indemnitors bound themselves to pay premiums "until [Bond Safeguard] shall be discharged and released from any and all liability and responsibility" on the subdivision bond. The GAI does not release Indemnitors from their responsibility to pay the premiums until they have delivered "competent written evidence" of Bond Safeguard's discharge from all liability on the performance bond to Bond Safeguard's executive offices. As noted above, because the performance bond was not discharged by operation of law, letters indicating San Tan's intent to cancel the bond do not satisfy the GAI's specific requirements to relieve Indemnitors of the requirement to pay premiums. *See supra* ¶ 18. It was not until the court discharged the performance bond on equitable grounds in February 2013 that Indemnitors were released from their contractual duty to pay premiums under the GAI.

**CONCLUSION**

¶21        Without action by the County discharging the performance bond or an order from the court cancelling the bond, Indemnitors were bound to continue to pay the annual premiums due and owing under the GAI. San Tan's attempt to unilaterally cancel the performance bond did not relieve Indemnitors of their contractual duty under the GAI to pay premiums from February 2010 to February 2012. Accordingly, we affirm the court's judgment in favor of Bond Safeguard.

**¶22** Bond Safeguard requests an award of attorney's fees and costs pursuant to A.R.S. §§ 12-341, -341.01. We grant Bond Safeguard its costs; however we deny the request for attorney's fees. *Munger Chadwick, P.L.C. v. Farwest Dev. And Constr. of the Southwest, LLC*, 235 Ariz. 125, 128, ¶ 14, 329 P.3d 229, 232 (App. 2014).



Ruth A. Willingham · Clerk of the Court
FILED: gsh