[Nos. 20777, 20778, 20779, 20780. *En Banc.* February 10, 1928.]

NORTH PACIFIC MORTGAGE COMPANY, *Respondent,* v. HERBERT H. SIELER *et al., Appellants.*[1]

[1] LIMITATION OF ACTIONS (72)—TOLLING STATUTE—PART PAYMENT —PERSONS BY WHOM MADE—EXECUTORS. Payments by an executor upon mortgages of the testator, in force against him at the time of his death, will toll the statute of limitations as against the devisees, where, under a non-intervention will given under Rem. Comp. Stat., § 1462, the executor was directed to pay the debts and settle the estate and authorized to sell or dispose of any part of it.

[2] DESCENT AND DISTRIBUTION (12)—RIGHTS OF DISTRIBUTEES— TITLE. Rem. Comp. Stat., § 1366, only vests the devisees with title to real estate, on the death of the testator, "subject to his debts . . . and other charges for which the real estate is liable under existing laws;" and they take subject to the burdens.

Appeals from judgments of the superior court for Grant county, Jeffers, J., entered April 9, 1927, upon findings in favor of the plaintiff, in consolidated actions for the foreclosure of mortgages, tried to the court. Affirmed.

*William M. Clapp* and *Herbert H. Sieler,* for appellants.

*Montgomery & Bordsen* and *W. Schwellenbach,* for respondent.

MITCHELL, J.—Heinrich Sieler, a widower, executed and delivered four promissory notes each bearing interest, and secured each note by a mortgage on a separate tract of land in this state. He owned the lands in his own separate right. One note for $6,500 was dated May 1, 1914, and matured on May 1, 1919. Another note for $12,000 was dated December 21, 1913,

[1]Reported in 264 Pac. 4.

and matured January 1, 1919. Another note for $5,000 was dated December 1, 1914, and matured December 1, 1919. And another note for $5,000 was dated December 1, 1914, and matured December 1, 1919. He made certain payments on each of the notes. He died on October 26, 1921, owning the real property described in the mortgages and leaving a nonintervention will in which he directed that the executor of his will, "as soon as he has sufficient funds in his hands," pay funeral expenses, the expenses of the last sickness and all just debts. He devised and bequeathed his real and personal property to his seven children share and share alike, modified by advancements he had made to two of them, which were to be taken into account in the settlement the executor was directed to make with the devisees. He appointed his son Herbert H. Sieler executor of his will and directed that no bonds be required of him, and that the estate be settled without the intervention of any court. The will further provided that the executor,

"  .  .  .  shall cause this my last Will and Testament to be proven and admitted to probate; He shall pay my funeral expenses the expenses of my last sickness, my just debts and allowances herein made as soon as may be after said Will is admitted to probate; That upon this Will being admitted to probate my said executor shall have full power to sell, dispose of, and convey all of, or any part of my estate either real or personal, or both, and it shall not be necessary for him to account to any court for the proceeds of said sale or sales and it shall not be necessary for him to obtain any order of the court to make any sale."

The will was probated and Herbert H. Sieler was approved and appointed by the court as executor. He qualified as such and procured an order declaring the solvency of the estate and directing him to carry out the terms of the will under the law pertaining to the

settlement of estates without the intervention of court. In the performance of his duties, he made one or more payments on each of the mortgages. No creditor's claim for either of the debts was presented to the executor for allowance or rejection. A balance remaining due upon each mortgage indebtedness, the owner and holder, North Pacific Mortgage Company, a corporation, commenced these actions in the early part of October, 1926, to foreclose the mortgages, seeking no deficiency judgment, but looking to the lands only for payment. At the time these actions were commenced, the executor was still acting as such, not having yet completed the performance of his duties under the terms and directions of the will.

The executor as such and other interested parties, including all the devisees under the will, were made parties defendant to the suits. The devisees appeared and contested the foreclosures. The four cases were consolidated for trial and resulted in separate judgments foreclosing the mortgages, from which appeals have been taken by all of the devisees.

The cases on appeal, as they appear in this court, are numbered 20777, 20778, 20779 and 20780. They have been submitted upon arguments and one set of briefs that cover all four cases. Payments were made on each of the notes and mortgages, both before and after the death of Heinrich Sieler, at such intervals that the full period of six years did not elapse between any two of the payments nor between the last payment and the commencement of the action. All payments after the death of Heinrich Sieler were made by his executor, as executor, and without any authority from the devisees personally. Appellants contend that, in each case, the action was commenced more than six years after the last payment made by Heinrich Sieler; that upon his death on October 26, 1921, title to the prop-

erty vested immediately in them by the terms of the will and Rem. Comp. Stat., § 1366 [P. C. § 9863], that payments made by the executor, as such, in no way affected their title nor the running of the statute of limitations as to them and their rights in the real property; and that the actions are barred. This presents the only question in the cases.

[1, 2] The four cases are not similar as to the facts. First, we dispose of the case involving the $6,500 mortgage given to secure the note dated May 1, 1914, that matured May 1, 1919. The last payment made by Heinrich Sieler on this indebtedness was May 1, 1920, more than six years before the commencement of the foreclosure action. The executor made substantial payments on this indebtedness November 1, 1922, May 1, 1924, and March 7, 1925.

The case of *Anrud v. Scandinavian American Bank,* 27 Wash. 16, 67 Pac. 364, is pressed upon our attention by the appellants. In that case, it was held that, in the foreclosure of a mortgage given by an ancestor, his heirs were necessary parties under the statute which provides that the title of an ancestor vests in the heirs immediately on his death. The statute of limitations was in no way involved in that case nor had the administrator of the estate done anything whatever by way of payment or otherwise affecting the enforcibility of the mortgage.

*Stubblefield v. McAuliff,* 20 Wash. 442, 55 Pac. 637, is also relied on by the appellants. That was an action to recover judgment against James McAuliff on two notes made by him and to foreclose three mortgages given to secure the notes. One of the mortgages, securing one of the notes, was executed by McAuliff and his then wife, Isabella McAuliff, covering real property that belonged to them as a community. She died intestate in 1889 and no administration had been

had upon her estate. The suit in foreclosure was brought more than six years after the maturity of the note and mortgage. He had made payments on the note from time to time after maturity, both before and after the death of Mrs. McAuliff. But, as the opinion says, "there is no contention that Isabella Mc-Auliff authorized any of the payments made after maturity of the note." It was held that, as to him, the statute of limitations, which now is Rem. Comp. Stat., § 177 [P. C. § 8184], did not apply, but that it did apply as a defense, so far as the rights of the children of Mr. and Mrs. McAuliff were concerned in that portion of the mortgaged property they inherited upon the death of their mother. The holding in this latter respect was put upon the rule in this state relating to co-obligors, that "part payment by one person, being equivalent to a new contract based upon an old consideration, upon which a cause of action accrues at the time of the payment, binds only the person making the payment, *or one whom he has authority to bind by a new contract to pay the balance.*" That is, " 'The defendants having succeeded, by inheritance, to the estate and interest of their mother, occupy the same position, and are entitled to every defense which could have availed to the original mortgagor had she lived . . . ' " as was said in *Bank of Albion v. Burns,* 46 N. Y. 170, quoted in the *Stubblefield v. McAuliff* case, *supra.*

The case of *Farmers & Mechanics Bank v. San Poil Consolidated Co.,* 126 Wash. 137, 217 Pac. 707, citing the *Stubblefield v. McAuliff* case, reaffirms the rule that part payment by one maker of a promissory note does not start the statute afresh as to other makers, unless such payment was "authorized or ratified" by such other makers.

The present case is different from those in important particulars. In the *Anrud* case the statute of limitations was not involved. The question there was one of necessary parties to the action. In the *Farmers & Mechanics Bank* case, *supra,* co-obligors were held not bound by a payment on a promissory note not authorized or ratified by them as affecting their right of defense under the statute of limitations. In the *Stubblefield* case the children inherited their mother's estate. She had not paid or authorized any payment on the indebtedness during her lifetime and, after her death, her estate was not administered upon; she had no representative to make any payment on the indebtedness.

In the present case, the appellants took title under the will and the statute. The title was taken with its burdens. The statute, Rem. Comp. Stat., § 1366, says that the title shall vest immediately in his heirs or devisees "subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws." The will is what is commonly called a nonintervention will. It was written under Rem. Comp. Stat., § 1462 [P. C. § 9967], which provides for the management and settlement of estates by the executor without the intervention of the court, with certain exceptions. But it provides that the estate shall be "settled." And the next section of the code, appearing in that same position in the original act of 1917, provides that executors under such wills

" . . . shall have power, after the filing of an inventory of the estate, if the said estate has been adjudged solvent, to mortgage, lease, sell and convey the real and personal property of the testator without an order of the court for that purpose and without notice, approval or confirmation, and in all other respects administer and settle the estate without the in-

tervention of the court." Laws of 1917, p. 667; Rem. Comp. Stat., § 1463.

By the will, the executor is directed to pay all debts of the testator, and for that purpose the testator placed at the disposal of the executor any or all of his property, real or personal, or both. Under the will, the statutes, and the order of court appointing the executor, the latter was commissioned as a representative of the testator to pay this debt, among others. The executor, in making the payments, not only acted with full authority but did precisely what he was appointed and directed to do. He made the payments with funds of the estate. Had Heinrich Sieler been alive at the date of those payments and some representative of his, with power equal to that the executor possessed, had made the payments under the direction of Heinrich Sieler, the latter would have been bound thereby to the extent of its starting afresh the running of the statute of limitations, and these appellants, having taken title under his will and the statutes, occupy a like position and are entitled to no defense that the testator, the original mortgagor, could not assert had he lived. The title vested subject to the right and duty of the authorized agent or representative of the person from whom the title accrued to make the payments in question, with the resultant effect of interrupting the running of the statute of limitations, now asserted as a defense by the devisees.

As to the other three cases, 20778, 20779 and 20780, the records show that Heinrich Sieler made a substantial payment on each of the notes and mortgages less than six years prior to the commencement of the action.

Judgments affirmed.

MACKINTOSH, C. J., MAIN, FULLERTON, PARKER, TOLMAN, ASKREN, and FRENCH, JJ., concur.