[Nos. 545-3; 546-3.    Division Three.    July 6, 1973.]

CHESTER HIGGENBOTHAM *et al.*, *Respondents*, v. BERNARD J. TOPEL, *Appellant*, WILLIAM F. DREGER *et al.*, *Respondents*.

*Harry E. Hennessey* (of *Hennessey, Curran, Kelly & Workland*), for appellant.

*Norman D. Brock* (of *Underwood, Campbell, Zellmer & Kain*), and *Patrick H. Murphy*, for respondents.

GREEN, C.J.—Two questions are presented:

(1) Is a devisee under a will, who receives wheatland encumbered by a lease that requires the lessor to pay the lessee for summer fallow upon expiration of the lease, liable to the lessee for such payment?

(2) Upon expiration of the lease, is a contract purchaser

of the land and assignee of the leases liable over to his assignor for the original lessor's obligation to pay the lessee for summer fallow in the absence of an express agreement to do so?

We answer "yes" to (1) and "no" to (2).

Defendant, Bernard J. Topel, Catholic Bishop of Spokane, a corporation, acquired certain wheatland by inheritance under a will. During the probate, the executors leased a portion of the land to plaintiffs Chester, Russell and Calvin Higgenbotham. Another portion was leased to plaintiff Arthur Eagle. In 1969, after the property had been distributed, the lessees paid the landlord's share of the crop due under the leases to the Bishop.

On February 12, 1970, the Bishop sold the property to the defendants, William F. and William H. Dreger and their respective wives, under a real estate contract. The contract contained the following proviso:

12. The vendors agree to furnish title insurance policy certified to the date hereof, showing title in vendors *free from incumbrance,* except easement for roadways and *existing leases.*

(Italics ours.) On February 20, 1970, the Bishop executed a warranty deed in favor of Dregers as grantee, and simultaneously executed an assignment of the lessor's interest under the leases to the Dregers as assignee. All of these documents were placed in escrow. The lessees paid the landlord's share of the 1970 crop due under the leases to the assignee, Dregers.

On August 31, 1970, the leases expired. The leases provided that upon their expiration the summer fallow was the property of the lessees and that the lessor would pay the lessees for it.[1] After discussion and negotiation, Dregers refused to pay the lessee-plaintiffs.

---

[1]Higgenbotham lease:

"It is mutually agreed that the summer fallow now on said premises (946 acres) is the property of and belongs to the second parties, the second parties having contemporaneously herewith . . . 'paid to the first parties the sum of Seven Dollars and Fifty cents ($7.50) per acre for same; and it is further mutually agreed that within thirty (30) days

This action was commenced against the Bishop and the Dregers to enforce the summer fallow provision. The Bishop cross claimed against the Dregers for judgment over based upon the sale of the land and assignment of the leases. The trial court entered judgment against the Bishop but denied judgment against Dregers. The Bishop appeals from the judgment against him and denial of a judgment over on the cross claim.

First, it is contended the court erred in entering judgment against the Bishop. It is urged that since the Bishop was not a named party to the lease he was not required to assume the affirmative obligation to pay for summer fallow on expiration of the leases and cannot be held liable to the lessees. We disagree.

██ The leases in question were entered into by the executors of the estate during the course of administration of a nonintervention will which devised the real property to the Bishop. None of the parties question the executor's authority to lease the property. RCW 11.68.040. This real property vested in the Bishop immediately upon the testator's death, "subject to his debts, . . . expenses of administration and any other charges for which such real estate is liable under existing laws." RCW 11.04.250. When the probate was closed, the Bishop took title to the wheatland burdened by the leases. *North Pac. Mortgage Co. v. Sieler*, 146 Wash. 530, 264 P. 4 (1928). The bequest was never rejected; instead, the Bishop accepted the fruits of

after the expiration of this lease the parties of the first part shall pay to the parties of the second part a sum of Seven Dollars and Fifty cents ($7.50) per acre plus the actual cost of any fertilizer applied and fifty cents (50¢) per acre for applying same for all summer fallow.' "

Eagle lease:

"It is further understood and agreed that the summer fallow on said described premises at the expiration of this lease shall belong to and be the property of the lessee and that the lessor will pay to the lessee within thirty days after the expiration of this lease or other termination thereof, the reasonable and fair value of preparing said summer fallow including the cost of any fertilizer thereon and cost of applying same. It being expressly understood and agreed that the lessee will at his sole expense prepare and care for summer fallow during the last year of this lease in a first-class, farmer-like manner."

the encumbered inheritance by receiving the landlord's share of the crop in 1969 and in February, 1970 sold the property on contract to Dregers for $700,000, receiving a $75,000 cash downpayment. In these circumstances, the Bishop succeeded to and assumed all of the rights and liabilities of the lessor-estate under the leases. Obligations lawfully created by an executor under a lease become the liability of a devisee who accepts the inheritance, to the extent of the value of the inheritance. *North Pac. Mortgage Co. v. Sieler, supra.* If this were not so, lessees from an estate would be without remedy after distribution of the real estate.

Inherent in the Bishop's claim that judgment was erroneously entered against him, is the question of whether the sale to Dregers relieved the Bishop of liability to pay the lessees for the summer fallow under the lease. It is contended this liability was a covenant running with the land and, therefore, when the land was sold on contract and the lease assigned to Dregers, the Bishop was relieved from liability and Dregers became the sole liable party. We disagree. As observed in 1 H. Tiffany, *Real Property* § 116, at 182, (3d ed. 1939):

> Though a lessor transferring his reversionary interest loses, it seems, any right of action for subsequent breaches of the lessee's covenants, he still remains liable on his own covenants, since *one cannot, by his own act, without the consent of the other party, relieve himself from a contractual liability,* the same principle being applicable here as in the case of an assignment of the leasehold, by which the original lessee is not relieved from liability on his covenants.

(Italics ours.) *See also* 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 25 (1965); 21 C.J.S. *Covenants* § 86 (1940); *Glendale v. Barclay,* 94 Ariz. 358, 385 P.2d 230, 232 (1963); *DeLano v. Tennent,* 138 Wash. 39, 43, 244 P. 273, 45 A.L.R. 766 (1926).[2]

---

[2]There are some cases where courts have relieved the seller-lessor from liability upon a sale and substituted the purchasers as the new landlord with full liability for the burdens contained in a lease. How-

The covenant to pay for summer fallow, whether or not it was a burden running with the land, remained the personal liability of the original lessor-estate to which the Bishop, as devisee, succeeded, up to the value of the inherited property, by operation of law. In the absence of plaintiff's consent to relieve the Bishop of liability and look solely to Dregers for payment, plaintiffs were entitled to recover from the Bishop.

Second, it is contended the court erred in not granting judgment in favor of the Bishop against Dregers upon its cross claim. This contention resolves itself into a question of whether Dregers, when they bought the property on contract and received an assignment of the leases, agreed to hold the Bishop harmless from the burden to pay for summer fallow on expiration of the leases. The Bishop argues Dregers are liable over to him. We disagree.

Unfortunately, the record is void as to the circumstances surrounding the sale of the property and assignment of the leases. Consequently, the only facts which shed any light on the parties' intentions are contained in the documents themselves. The contract of sale shows that the Bishop agreed to convey the property free and clear of encumbrance except for existing leases. The warranty deed placed in escrow with the contract does not refer to the leases. The assignment transfers all of the lessor's interest under the leases to Dregers. In none of the documents does the purchaser-assignee, Dregers, expressly assume the liability imposed on the lessor for summer fallow.

It can be speculated that Dregers increased their pur-

---

ever, these are usually cases where performance of the lessor's burden is dependent upon a right of entry based upon ownership. For example: a covenant to heat and repair, *Glidden v. Second Ave. Inv. Co.,* 125 Minn. 471, 147 N.W. 658 (1914); *Revel v. Butler,* 322 Ill. 337, 153 N.E. 682 (1926); *see Scholey v. Steele,* 59 Cal. App. 2d 402, 138 P.2d 733 (1943); a covenant for quiet enjoyment, *Stillwell Hotel Co. v. Anderson,* 4 Cal. 2d 463, 50 P.2d 441 (1935); *see* 51C C.J.S. *Landlord and Tenant* § 258(2)(b) (1968). Cases such as these are distinguishable from the instant case because, here, performance and the promise to pay for summer fallow are not dependent upon the lessor's right of entry or possession.

chase price for the property because of the summer fallow on the theory it was an improvement as acknowledged in *Leinweber v. Leinweber,* 63 Wn.2d 54, 385 P.2d 556 (1963). Substantial summer fallowing occurred prior to the purchase. If this be the case, it would be a windfall to the Bishop if he were permitted to recover on his cross claim. On the other hand, it could be speculated that since Dregers got the growing crop and the summer fallow, they assumed responsibility to pay for it on expiration of the lease. To the contrary, it may also be speculated that the purchase price included the lessor's share of growing crop and summer fallow. There are no facts in the record to elucidate the true situation.

■ Ordinarily, the assignee of an executory contract is not liable on the contract in the absence of an express assumption of the obligations contained therein. *Bimrose v. Matthews,* 78 Wash. 32, 38, 138 P. 319 (1914); *Hardinger v. Fullerton,* 165 Wash. 483, 5 P.2d 987 (1931); *Townsend v. Rosenbaum,* 187 Wash. 372, 396, 60 P.2d 251 (1936). The burden of proof rests upon the Bishop. We are unable to find on the record before us that the Bishop sustained his burden of proof on the cross claim. It was, therefore, properly denied.

■ Finally, the Bishop contends judgment should have been entered in favor of the lessees and against Dregers. The lessees did not appeal from the court's refusal to enter such judgment; the Bishop cannot appeal in their behalf. Therefore, that issue is not before us.

Judgment affirmed.

MUNSON and McINTURFF, JJ., concur.