**BARCLAYSAMERICAN/BUSINESS CREDIT, INC., a corporation, Plaintiff,**

v.

**PAUL SAFRAN METAL COMPANY, a corporation, Defendant.**

No. 82 C 7204.

United States District Court, N.D. Illinois, E.D.

June 20, 1983.

---

Sheldon L. Solow, William D. Kelly, Schwartz & Freeman, Chicago, Ill., for plaintiff.

Harvey Berman, James Poszczor, Vihon, Fuchs, Temple & Berman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff BarclaysAmerican/Business Credit, Inc. ("Barclays") seeks payment allegedly due from defendant Paul Safran Metal Company ("Safran") under an account receivable assigned to Barclays by Interstate Smelting & Refining Company ("Interstate").[1] Both parties have moved for summary judgment. Summary judgment is appropriate where there are no genuine issues of material fact and judgment may be rendered as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir.1979).

---

1. Barclays is a Connecticut corporation with its principal place of business in Connecticut. Safran is an Illinois corporation with its principal place of business in Illinois. Jurisdiction is therefore assumed pursuant to 28 U.S.C. § 1332.

## I. *Facts*

The following facts are not disputed. Pursuant to a loan agreement between Interstate and Barclays dated December 10, 1980, Interstate borrowed money from time to time from Barclays.[2] Barclays in turn was granted a security interest in, *inter alia,* all of Interstate's existing and future accounts receivable. Between December 21, 1981, and March 26, 1982, Safran purchased metal products from Interstate, creating an account receivable in favor of Interstate in the amount of $44,125.52.

Interstate subsequently defaulted on its obligation under the loan agreement. Barclays notified Interstate by letter dated June 25, 1982, that it was taking possession of Interstate's accounts receivable. By letter dated June 21, 1982, Barclays notified Safran of Barclays' right to receive payments on Interstate's accounts receivable. Safran has refused to make payment to Barclays, giving rise to this action for recovery of the $44,152.52 allegedly owing on the account receivable.

## II. *Defense*

Illinois Revised Statutes ch. 26 § 9–318 defines the rights of an account debtor as against an assignee seeking to recover on the account. Section 9–318(1) provides that:

(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9–206 the rights of an assignee are subject to

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) *any other defense or claim* of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

(Emphasis added). Accordingly, Safran asserts in its defense that between November 11, 1981, and July 1, 1982, Safran sold metal

scrap to Interstate in the amount of $61,891.53. Safran alleges that Interstate paid $11,165.70 toward this amount, leaving an amount owing of $50,725.83 to be set-off in part by the $44,152.52 owed to Interstate by Safran. Safran contends that under § 9–318, Barclays' right to collect on the account receivable is subject to Safran's claim against Interstate. Because Interstate's debt to Safran exceeds Barclays' claim, Safran seeks summary judgment in its favor.

## III. *Discussion*

■ Barclays argues that Safran cannot use the set-off as a defense in this action because it could not have successfully asserted the set-off against Interstate in an action by Interstate to collect the account receivable. In support of its argument, Barclays cites Ill.Rev.Stat. ch. 26 § 2–717 and a series of cases purportedly holding that a defendant's claim against a plaintiff may be used as a set-off only where the claim arose from the same contract as the plaintiff's claim. Section 2–717 concerns contracts for the sale of goods and provides:

The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

By its language, § 2–717 simply sets forth one right of a buyer of goods against a seller. It is not an exclusive pronouncement of a buyer's rights, nor does it address the rights of a buyer as against a seller's assignee. Section 2–717 cannot be said to supercede or limit § 9–318, which does specifically address the rights of a debtor against an assignee.

■ Barclays nonetheless contends that set-off is allowable only where the defensive claim arises from the same contract or transaction as the plaintiff's claim. Even assuming that this proposition is true and that the cases cited by Barclays support

**2.** The agreement was actually executed between Interstate and Aetna Business Corpora- tion, Barclays' predecessor in interest.

the proposition,[3] § 9–318 by its terms does not limit a debtor's defenses to claims arising from the same contract as is being sued upon by the assignee. On the contrary, § 9–318(1)(a) provides that a debtor may raise any defense *arising from the contract,* and § 9–318(1)(b) provides that the debtor may assert *"any other defense or claim* of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." (Emphasis added). The Drafters' Comments to § 9–318(1) of the Uniform Commercial Code (on which Ill.Rev.Stat. ch. 26 § 9–318(1) is identically modeled) confirm that a debtor is not limited to defenses arising from the contract between him and the assignor:

> The account debtor may also have claims against the assignor which arise independently of that contract: an assignee is subject to all such claims which accrue before, and free of all those which accrue after, the account debtor is notified [of the assignment].

▮ Barclays attempts to reconcile its position with § 9–318 by explaining that because Safran's claim could not have been asserted as a set-off against Interstate, it is not actually a "defense or claim ... against the assignor." Barclays' reading of § 9–318 is too narrow, however. Even assuming that Safran, in a suit by Interstate to collect on the account receivable, could not properly have asserted its claim as a set-off, Safran certainly could have presented it as a counterclaim. "Claim", as used in § 9–318(1), encompasses counterclaims as well as set-offs. *See Farmers Acceptance Corp. v. DeLozier,* 178 Colo. 291, 496 P.2d 1016, 1018 (Colo.1972); Gilmore, The Assignee of Contract Rights and His Precarious Security, 74 Yale L.J. 217, 229 (1964–65).[4] Although Safran frames its claim as a set-off, we note that Fed.R.Civ.P. 8(c) counsels the court to treat a misnomered affirmative defense as a counterclaim, and *vice versa.*[5] We therefore look beyond the mere form of the claim and conclude that a "claim" as contemplated by § 9–318(1)(b) has been asserted by Safran.[6]

▮ The question remaining under the terms of § 9–318(1)(b), then, is whether Safran's claim accrued prior to its receipt of notification that its account receivable had been assigned to Barclays. Safran received notification of the assignment by letter dated June 21, 1982. According to the record of sales submitted by Safran, the last sale of scrap metal made to Interstate prior to June 21, 1982, occurred on June 7, 1982. At that point, Interstate had purchased scrap metal in the amount of $51,229.29 and had made a payment of $11,165.70. There was

---

**3.** At common law, "recoupment" described a claim that defendant could assert against plaintiff if it arose from the same transaction as the plaintiff's claim. A "set-off" referred to a liquidated claim by defendant unrelated to the plaintiff's claim. The distinction gradually disappeared as modern counterclaim practice developed. *See generally* Wright and Miller, Federal Practice and Procedure § 1401 (1971).

Moreover, the cases cited by Barclays do not concern claims by debtors against assignees, but rather, claims arising under contracts for the sale of goods governed by Article 2 of the Uniform Commercial Code. *E.g., Columbia Gas Transmission Corp. v. Larry H. Wright, Inc.,* 443 F.Supp. 14 (S.D.Ohio 1977).

**4.** To interpret "defense or claim" as used in § 9–318(1)(b) so narrowly as to exclude all claims not arising from the subject contract would eliminate the distinction between the claims to which § 9–318(1)(a) applies and those to which § 9–318(1)(b) applies, rendering the two provisions contradictory.

**5.** As against Interstate, Safran's claim would properly have been a counterclaim, but as against Barclays, Safran's framing of its claim as an affirmative defense is arguably proper. (*I.e.,* Safran is defending against Barclays' claim rather than asserting a counterclaim against Barclays.)

**6.** In its answer to Safran's affirmative defense, Barclays neither admitted nor denied the existence of Interstate's debt to Safran. In support of its motion for summary judgment, Safran submitted the affidavit of Paul Safran, which states that sales of scrap metal were made to Interstate, and a list of the dates and amounts of sales to Interstate. In light of the absence of contradictory evidence, we accept the record of sales as an uncontested fact. Barclays may, of course, subsequently bring contradictory evidence to the Court's attention in the form of a motion for reconsideration if the interests of justice so require.

thus $40,063.59 then owing from Interstate to Safran. Safran's final sale to Interstate occurred on July 1, 1982, in the amount of $10,662.14. Because this sale occurred after Safran's receipt of notification under § 9–318(1)(b), it may not be used to reduce Barclays' claim.

## IV. *Conclusion*

Barclays' claim against Safran for $44,-125.52 will be reduced by $40,063.59, the amount owed Safran by Interstate at the time of notification of assignment. Judgment will be entered for Barclays in the amount of $4,061.93. It is so ordered.