[No. 6196–5–III. Division Three. March 28, 1985.]

LYDIG CONSTRUCTION, INC., *Appellant,* v. RAINIER
NATIONAL BANK, *Respondent.*

*Lynden O. Rasmussen, Lawrence H. E. Vance, Jr.,* and *Winston & Cashatt,* for appellant.

*Robert J. Adolph, Christopher M. Carletti,* and *Weinrich, Gilmore & Adolph,* for respondent.

McINTURFF, J.—Lydig Construction, Inc., appeals a trial court decision denying its claim seeking recovery of a progress payment it made to a subcontractor. The sole issue is whether a general contractor may assert an affirmative claim against a subcontractor's assignee for the contractor's negligently made progress payments. We affirm, holding the contractor cannot.

This case involves a dispute between a general contractor and a bank, the assignee of a subcontractor. On August 12, 1981, Lydig entered into a public contract with Kennewick School District 17 to construct an elementary school. As general contractor, Lydig subcontracted mechanical and plumbing work to Plumbing Contractors, Inc. (hereinafter PCI).[1]

PCI had been a customer of Rainier National Bank for several years before this subcontract with Lydig. On July 1, 1981, PCI established a $300,000 line of credit and executed a note in that amount to Rainier. This note allowed PCI to borrow against the credit up to 75 percent of receivables outstanding for 60 days or less. As PCI received payments for its receivables, these checks were paid to Rainier,

---

[1] When Lydig entered its subcontract with PCI, it did not require a performance bond for PCI.

reducing the balance owed.

During the next several months, through numerous phone calls and complaints from PCI's suppliers regarding late payments, Lydig became aware that PCI was in financial trouble and delinquent in its supplier payments. Consequently, in March 1982 Lydig issued joint checks to four different suppliers of PCI; the purpose of the joint checks was to insure the payments went to the suppliers rather than PCI. Also during this time, PCI's President, Lawrence Robertson, informed Lydig of PCI's banking relationship with Rainier.

In April 1982, Lydig issued its check for $84,042.55 as a progress payment to PCI for work performed on this project. Pursuant to the loan agreement between Rainier and PCI, PCI deposited this check with Rainier to reduce its loan balance and, after receiving this payment, Rainier made two subsequent advances to PCI totaling $35,315.

The Superior Court determined Lydig had negligently made the progress payment and RCW 62A.9–318 precluded Lydig from asserting an affirmative claim against Rainier. Lydig now appeals, contending assignee–Rainier "stands in the shoes" of assignor–PCI and therefore any claims that may be brought against PCI may, in like fashion, be brought against Rainier, citing *Farmers Acceptance Corp. v. DeLozier,* 178 Colo. 291, 496 P.2d 1016, 1018 (1972). This case raises an issue of first impression in Washington. No Washington cases construing RCW 62A.9–318(1)(a) have been cited by the parties and our independent research has disclosed none.

RCW 62A.9–318 provides, in pertinent part:

(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in RCW 62A.9–206 the rights of an assignee are subject to

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) any other defense or claim of the account debtor

against the assignor which accrues before the account debtor receives notification of the assignment.

This case does not involve an agreement which precluded the assertion of defenses or claims falling within section 9–206.[2] Thus, the issue is whether this section affords the account debtor, Lydig, an affirmative claim against the assignee, Rainier, for payments it negligently made.

There are two distinct lines of cases construing U.C.C. section 9–318(1)(a). Some courts interpret this section narrowly, permitting an account debtor to assert a claim only as an affirmative defense and not as the basis for an independent claim against an assignee. *See, e.g., Michelin Tires (Can.) Ltd. v. First Nat'l Bank,* 666 F.2d 673, 677–78 (1st Cir. 1981); *Gold Circle Stores v. Riviera Finance–East Bay, Inc.,* 540 F. Supp. 15, 21 (N.D. Cal. 1982); *Cuchine v. H.O. Bell, Inc.,* __ Mont. __, 682 P.2d 723, 724–25 (1984); *Meyers v. Postal Fin. Co.,* 287 N.W.2d 614, 616–19 (Minn. 1979); *James Talcott, Inc. v. Brewster Sales Corp.,* 16 U.C.C. Rep. Serv. 1165, 1167 (N.Y. Sup. Ct. 1975).

In *Michelin,* for example, the account debtor brought an action to recover progress payments made to the assignee in reliance on the assignor's fraudulent representations that work under a construction contract had been completed. The assignee had no actual knowledge of the assignor's fraud, but was aware of the assignor's duties under the contract and knew that the assignor was encountering financial difficulties. The account debtor contended that because its claim arose from the contract, it could recover under section 9–318(1)(a). The First Circuit affirmed the District Court's rejection of this theory, holding that section 9–318(1)(a) did not allow affirmative claims by an account debtor against an assignee. The *Michelin* court

---

[2]RCW 62A.9–206 provides, in substance, that in a commercial context a good faith assignee for value, who takes an assignment without notice of a claim or defense, may enforce against a buyer or lessee of goods an agreement given by such a person that defenses or claims will not be asserted against an assignee, unless the defense is of a type which may be asserted against a holder in due course of negotiable paper.

concluded the phrase "subject to", which precedes "any defense or claim" in section 9–318(1)(a), implies that the account debtor's claim can only be used as a defense to an assignee's suit to enforce a contract right. 666 F.2d at 677 (citing *Anderson v. Southwest Sav. & Loan Ass'n,* 117 Ariz. 246, 248, 571 P.2d 1042, 1044 (1977) and *Englestein v. Mintz,* 345 Ill. 48, 61, 177 N.E. 746, 752 (1931)).

Several courts, however, liberally construe section 9–318(1)(a) to allow affirmative claims. *See, e.g., Barclays-American/Business Credit, Inc. v. Paul Safran Metal Co.,* 566 F. Supp. 254, 256–57 (N.D. Ill. 1983); *K mart Corp. v. First Pa. Bank,* 29 U.C.C. Rep. Serv. 701 (Pa. C.P. 1980); *Benton State Bank v. Warren,* 263 Ark. 1, 562 S.W.2d 74, 78 (1978); *Massey–Ferguson Credit Corp. v. Brown,* 173 Mont. 253, 567 P.2d 440, 444 (1977); *DeLozier,* 496 P.2d at 1018. In *Massey–Ferguson,* for example, the Montana Supreme Court allowed an affirmative recovery based upon the language of section 9–318(1)(a). Although the case was decided on other grounds, the court, in dicta, declared the word "claim" includes setoffs and counterclaims and that section 9–318(1)(a) would support an action against an assignee who retained payments made because of the account debtor's mistake, and who did not change his position relying on those payments. *Massey–Ferguson,* 567 P.2d at 442.[3]

 We find RCW 62A.9–318(1)(a) does not afford an account debtor an affirmative claim against an assignee for

---

[3]Commentators disagree on the availability of affirmative claims under 9–318(1)(a). *Compare* Henson, *A Problem Involving Assignments of Accounts Under Article 9,* 40 Wash. & Lee L. Rev. 41 (1983) (Use of the word "claim" refers to the term "set–off" found in Official Comment 1 to section 9–318. This indicates account debtors may assert counterclaims only, and not affirmative ones.) *with* Note, *Affirmative Recovery Against Assignees Under Section 9–318(1)(a) of the Uniform Commercial Code,* 51 Geo. Wash. L. Rev. 465 (1983) (Official Comment states this section makes no substantial change in prior law. The pre–U.C.C. common law of contracts and restitution indicates that affirmative claims arising from the contract should be permitted against an assignee.). *See also* Annot., *Construction and Effect of U.C.C. Art. 9, Dealing With Secured Transactions, Sales of Accounts, Contract Rights, and Chattel Paper,* 30 A.L.R.3d 9, § 10.1 (1970 & Supp. 1984).

either one or all of five reasons. First, it has long been the rule in Washington that where a statute is ambiguous, the language of the act should be "construed in view of its title and lawful purposes, since the subject expressed in the title fixes a limit upon the scope of the act." *Thayer v. Snohomish Logging Co.*, 101 Wash. 458, 460–61, 172 P. 552 (1918); *see also Meese v. Northern Pac. Ry.*, 211 F. 254, 261 (9th Cir.), *rev'd*, 239 U.S. 614, 60 L. Ed. 467, 36 S. Ct. 223 (1914); *Washington Optometric Ass'n v. County of Pierce*, 73 Wn.2d 445, 449, 438 P.2d 861 (1968); *State v. Lundell*, 7 Wn. App. 779, 781–82, 503 P.2d 774 (1972); Annot., *Title of Statutes as an Element Bearing Upon Their Construction*, 37 A.L.R. 927, 944 (1925 & Supp. 1984). RCW 62A.9–318 is entitled in part: "defenses against assignee". The term "defense" suggests that the assignee must be suing the account debtor, not the reverse. The use of the word "claim" is ambiguous. But this would appear, in context, to refer to a claim made by the account debtor prior to payment where the assignee is suing to recover payments alleged to be due and owing. *See* Henson, *A Problem Involving Assignments of Accounts Under Article 9*, 40 Wash. & Lee L. Rev. 41, 45 (1983).

Second, the nature and purpose of the act indicate its operational effect. *Washington Fed'n of State Employees v. State*, 98 Wn.2d 677, 684, 658 P.2d 634 (1983). Instead of the word "claim", the term "set–off" is used as a synonym in Official Comment 1 to section 9–318.[4] Thus, the title and

---

[4]Although the Washington State comments do make some reference to the "set–off variety" of the "claim[s]" to which 9–318(1)(b) refers, the Official Comments, adopted by our state, indicate more conclusively that this section was not meant to allow an account debtor's affirmative claims against an assignee. Official Comment 1 reads:

Subsection (1) makes no substantial change in prior law. An assignee has traditionally been subject to defenses or set–offs [*sic*] existing before an account debtor is notified of the assignment.

Under prior law, the assignee of a contract was generally not held liable for the assignor's breach of contract. *Hardinger v. Fullerton*, 165 Wash. 483, 490, 5 P.2d 987 (1931); *Dahlhjelm Garages, Inc. v. Mercantile Ins. Co. of Am.*, 149 Wash. 184, 189, 270 P. 434 (1928); *Higgenbotham v. Topel*, 9 Wn. App. 254, 259, 511 P.2d 1365 (1973).

Official Comments to RCW 62A.9–318 indicate Lydig, as an account debtor, may not assert an affirmative claim against an assignee, Rainier.

 ■ Third, the section's language that

> "the rights of an assignee are *subject to . . .* (a) all the terms of the contract" connotes only that the assignee's rights to recover are limited by the [account debtor's] rights to assert contractual defenses as a set–off [*sic*], [which implies] that affirmative recovery against the assignee is not intended.

*Michelin,* at 677; *Gold Circle Stores,* at 21. The words "subject to" ordinarily denote "subordinate to", "subservient to", or "limited by." *Mintz,* 345 Ill. at 61; *Anderson.* As the *Mintz* court indicated, "[t]here is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights." 345 Ill. at 61.

Fourth, decisions permitting affirmative claims rely upon the pre–U.C.C. case of *Firestone Tire & Rubber Co. v. Central Nat'l Bank,* 159 Ohio St. 423, 112 N.E.2d 636 (1953). There, the court required the bank to return payments to an account debtor because, although the bank was innocent of the assignor's fraud, the bank had unknowingly aided that fraud by independently requesting periodic payment from the account debtor. The bank attached invoices from the assignor to each request, thereby impliedly representing that the underlying obligation was valid. The court found that the account debtor relied on the genuineness of the invoices forwarded by the bank. Here, however, there was no such reliance. Rather, Lydig was aware PCI was in financial trouble and delinquent in its payments to suppliers. Indeed, Lydig issued joint checks to four different suppliers to insure that the payments went to the suppliers rather than PCI. Rainier's conduct did not, in any way, assist PCI in obtaining the progress payment from Lydig.

Fifth, notwithstanding the specific language of the U.C.C. and the applicability of prior case law, there is, as a policy matter, concern regarding the rule as established in *DeLo-*

*zier.* Allowing an account debtor to assert affirmative claims against assignees may "make every Banker, who has taken an assignment of accounts for security purposes, a deep pocket surety for every bankrupt contractor in the state to whom it has loaned money." *Benton State Bank,* 263 Ark. at 8 (Byrd, J., dissenting). Making the bank a surety not only would frustrate and discourage accounts receivable financing, but transaction costs would undoubtedly increase for everyone.

Thus, based upon a review of the language, Official Comments to and judicial construction of RCW 62A.9–318(1)(a), and the practical effect of allowing affirmative claims, we conclude this section does not allow account debtors, in this case Lydig, an affirmative claim against an assignee, Rainier.[5]

The judgment of the Superior Court is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court June 7, 1985.

---

[5]Lydig argues in the alternative that it should be able to recover the payment under the theory of unjust enrichment. The Uniform Commercial Code provides: "Unless displaced by the particular provisions of this Title, the principles of law and equity . . . shall supplement its provisions." RCW 62A.1–103. Thus, equity supplements the code only where code provisions do not displace other rules. Here, however, RCW 62A.9–318(1)(a) addresses this problem, and resort to other theories, which would possibly have produced a different result, is denied.