**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CURTISS SIMMONS CAPITAL
RESOURCES, INC., a Colorado
corporation,

          Plaintiff-Appellant/
          Cross-Appellee,

        v.

EDWARD KRAEMER & SONS,
INC.,

          Defendant-Appellee/
          Cross-Appellant,

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH,

          Defendant.

Nos. 00-1487
and 00-1511

(D. Colorado)

(D.C. No. 97-D-643)

**ORDER AND JUDGMENT**  *

Before **TACHA**, Chief Circuit Judge, **McKAY** and **ANDERSON**, Circuit Judges.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Curtiss Simmons Capital Resources, Inc. appeals from the grant of a motion for confirmation of, and the denial of its own motion to vacate, an arbitration award in favor of Edward Kraemer & Sons, Inc. Kraemer cross-appeals the denial of its motion for attorney's fees incurred in seeking confirmation of the award. We affirm.

## BACKGROUND

The origin of this case is a subcontract between Kraemer and Consolidated Landscaping, Inc., dated March 2, 1992, pursuant to which Consolidated agreed to perform certain landscaping work for Kraemer, who was the general contractor for the construction of the Twentieth Street Viaduct in Denver, Colorado, a project supervised by the Regional Transportation District ("RTD"). The subcontract contained a dispute resolution paragraph providing for arbitration to resolve any disputes between Kraemer and Consolidated, and it contained an attorney's fees provision providing for attorney's fees and costs for the prevailing party in any legal action.

On November 2, 1994, pursuant to Colo. Rev. Stat. § 38-26-107(1), Consolidated filed a statement of claim with the RTD, alleging that Kraemer was liable to Consolidated for $281,058.09 for damages purportedly caused by delays in the viaduct project. In accordance with § 38-26-107(2), the RTD withheld

contract funds from Kraemer to cover that amount, pending resolution of the claim. On March 1, 1995, Consolidated filed an amended claim in the amount of $358,605.60 and the RTD withheld $366,637.40 to cover that amended amount.

In October 1995, Consolidated received a $500,000 loan from Curtiss Simmons, payable on or before April 24, 1996. In connection therewith, Consolidated executed a security agreement granting Curtiss Simmons a security interest in the following:

> All accounts and accounts receivable now owned, or hereafter acquired, together with all increases to and replacement thereof, insurance proceeds, contract rights and general intangibles now owned or hereafter acquired.
>
> The security interest extends to any and all proceeds of the property described herein, including, but not limited to account, chattel paper, documents, deposit accounts, and goods.

Appellant's App. at 172. Curtiss Simmons loaned additional funds so that Consolidated's total indebtedness exceeded $700,000.

On April 17, 1996, Curtiss Simmons notified Kraemer of its loan to Consolidated and its security interest, told Kraemer that Consolidated had defaulted on the loan, and demanded that Kraemer pay Curtiss Simmons any money owed Consolidated under the subcontract.

At about this same time, Consolidated also defaulted on its contractual obligations to Kraemer. Kraemer then made a demand on Consolidated's surety, United Pacific Insurance Company, to perform Consolidated's remaining

-3-

obligations under the subcontract. In May 1996, United Pacific assumed Consolidated's subcontract obligations and hired a replacement to perform all of Consolidated's remaining work on the viaduct project.

A dispute then arose between Curtiss Simmons and Union Pacific over priority to any balances left under the subcontract. They ultimately reached an agreement whereby Curtiss Simmons disclaimed any interest in the subcontract balance but retained the right to pursue Consolidated's claim for delay damages against Kraemer.

On March 7, 1997, Curtiss Simmons filed this suit in Colorado state court against Kraemer and its surety, National Union Fire Insurance Co., seeking $364,678.40 in damages plus attorney's fees and interest. Citing diversity jurisdiction, Kraemer and National Union subsequently removed the case to federal district court in Colorado. After some discovery, Curtiss Simmons sought to invoke the arbitration clause in the subcontract and filed a stay in federal court pending arbitration. The magistrate judge eventually granted the stay. On November 21, 1997, Curtiss Simmons filed a demand for arbitration against Kraemer in the amount of $768,310, representing Curtiss Simmons' asserted damages in connection with its delay claim.

Kraemer filed a counterclaim against Curtiss Simmons for damages incurred by Kraemer because of Curtiss Simmons' pursuit of the delay claim. The

damages, styled "Lost Interest on Escrow Funds," Appellant's App. at 70, represented the interest allegedly lost by Kraemer on the funds held in escrow by the RTD pending resolution of the delay claim.

Kraemer and Curtiss Simmons agreed to a bifurcated proceeding in which the merits of the claims between Kraemer and Curtiss Simmons would be determined in the first phase and the determination of attorney's fees to be awarded the prevailing party, if any, would be determined in the second phase. [1]

The claims between Kraemer and Curtiss Simmons were argued to a panel of arbitrators August 2-6, 1999. On August 9, the panel entered a partial award denying Curtiss Simmons' claims against Kraemer and awarding Kraemer $15,326.78 on its counterclaim against Curtiss Simmons. On October 21-22 the panel heard argument on the attorney's fees issue. Kraemer sought $302,000 in attorney's fees, costs and expenses. On November 19, 1999, the panel entered a final award granting Kraemer $171,856.00 for attorney's fees plus costs and expenses in the amount of $58,464.70, for a total of $230,321.10. [2] Combined

---

[1]Kraemer had joined Union Pacific, Consolidated's surety, in the arbitration. Accordingly, the parties actually initially agreed to a tri-partite proceeding in which the claims between Kraemer and Curtiss Simmons would be determined in the first phase, the claims between Kraemer and Union Pacific would be determined in the second phase, and the attorney's fees issue would be resolved in the third phase. Kraemer and Union Pacific settled their claims following the first phase.

[2]We note there is a discrepancy of $0.40 between the amount appearing in
(continued...)

with the damage award, the total award against Curtiss Simmons was $245,647.88 plus interest. [3]

Kraemer subsequently filed a motion to confirm the arbitrators' award. Curtiss Simmons responded to the motion and filed its own motion to vacate the award. At the conclusion of a hearing before the federal district court, Kraemer made an oral motion that, if the court confirmed the award, it be permitted to seek attorney's fees incurred in pursuing confirmation of the award in federal court. On November 1, 2000, the court issued a final judgment in favor of Kraemer, confirming the arbitral award and denying Kraemer's motion for additional attorney's fees incurred in pursuing confirmation. Curtiss Simmons appeals the order confirming the arbitral award, as well as the denial of its motion to vacate the award, and Kraemer cross-appeals the district court's denial of attorney's fees Kraemer incurred in obtaining confirmation.

_____

[2](...continued)
the arbitration award and the actual amount of fees and costs expended by Kraemer. We rely on the figures found in the actual arbitration award.

[3]Additionally, as part of the arbitration panel's award, it determined that Curtiss Simmons must pay Kraemer $1,389.22 to reimburse Kraemer for administrative fees and expenses Kraemer had previously paid to the American Arbitration Association, as well as $6,660.84 for its share of the compensation and expenses due the arbitrators.

# DISCUSSION

"Our standard of review in cases confirming arbitration awards is the same as for any other district court decision, 'accepting findings of fact that are not "clearly erroneous" but deciding questions of law *de novo*.'" Kelley v. Michaels, 59 F.3d 1050, 1053 (10th Cir. 1995) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948 (1995)) (further quotation omitted). The district court's standard of review, in turn, which we apply as well in our own de novo review of the district court's application of the law, is extremely narrow and "has been described as 'among the narrowest known to the law.'" Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001) (quoting ARW Expl. Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995)). A court may vacate an arbitration award "only in the limited circumstances provided in § 10 of the [Federal Arbitration Act], 9 U.S.C. § 10, or in accordance with a few judicially created exceptions." Id.

Curtiss Simmons argues that we should vacate the arbitration award in this case under one of those judicially created exceptions which permits vacation of an award which is in "'manifest disregard' of the law." ARW Expl. Corp., 45 F.3d at 1463 (quoting Wilko v. Swan, 346 U.S. 427, 436-37 (1953)). Our court has interpreted the manifest disregard standard to require "'willful inattentiveness to the governing law.'" Bowen, 245 F.3d at 932 (quoting ARW Exploration Corp.,

-7-

45 F.3d at 1463). "Requiring more than error or misunderstanding of the law, . . . a finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it." Id. (citation omitted). "'[E]rrors in either the arbitrator's factual findings or his interpretation[s] of the law . . . do not justify review or reversal. . . .'" Sheldon v. Vermonty, No. 00-3337, 2001 WL 1338399 at *2 (10th Cir. Oct. 31, 2001) (quoting Denver & Rio Grand W. R.R. v. Union Pac. R.R., 119 F.3d 847, 849 (10th Cir. 1997)).

Further, arbitrators need not explain their reasons for an award. See Wilko v. Swan, 346 U.S. 427, 436 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989). Finally, an arbitration award may be based only upon those theories or matters which may "fairly be read" as included in the arbitration submissions. Kelley, 59 F.3d at 1054. Applying this exceedingly narrow standard of review, we turn first to Curtiss Simmons' appeal of the district court's order confirming the award and denying its motion to vacate. We then address Kraemer's cross-appeal of the denial of attorney's fees incurred in pursuing confirmation of the arbitral award.

## I. Curtiss Simmons' Appeal

Curtiss Simmons argues that the arbitrators manifestly disregarded Colorado law clearly establishing that Curtiss Simmons was merely a secured

party assignee "attempt[ing] to collect on its debt by asserting claims that belonged to the debtor [Consolidated]," Appellant's Opening Br. at 16, and, as such, protected by Article 9 of the Uniform Commercial Code, as implemented in Colo. Rev. Stats. § 4-9-317 and 318, [4] from being affirmatively liable for damages to Kraemer. Curtiss Simmons relies upon those statutory provisions, along with the case of Farmers Accept. Corp. v. DeLozier, 496 P.2d 1016 (Colo. 1972): "[t]he inquiry into whether Curtiss Simmons, as an assignee, could be held liable on Kraemer's counterclaim begins and ends with a review of C.R.S. § 4-9-317 and Delozier." Appellant's Opening Br. at 23. A review of those authorities, however, convinces us that the arbitrators did not manifestly disregard applicable law.

Colo. Rev. Stat. § 4-9-317 provided at the time that "[t]he existence of a security interest . . . given to a debtor to dispose of or use collateral, without more, does not subject a secured party to liability in contract or tort for the debtor's acts or omissions." Colo. Rev. Stat. § 4-9-318 provided in part that "the rights of an assignee are subject to: (a) [a]ll the terms of the contract between the account debtor and the assignor and any defense or claim arising therefrom . . . ." Those provisions were applied in DeLozier. 496 P.2d at 1018. Curtiss Simmons

---

[4]Colorado has recently revised its UCC statutes. Section 4-9-317 is now § 4-9-402, and § 4-9-318 is now §§ 4-9-404, 405 and 406.

argues that, under those statutes, as interpreted in DeLozier, in pursuing the delay claim initially filed by its assignor, Consolidated, Curtiss Simmons did "nothing more than . . . act[] as a secured party to collect money owed to Consolidated." Appellant's Reply Br. at 12. As a secured party assignee, Curtiss Simmons argues, it could only be subject to defensive claims in the nature of an offset to its claim against Kraemer, but it could not be liable for an independent claim for damages like Kraemer's counterclaim and an award of contractually-based attorney's fees. Kraemer responds that Curtiss Simmons, in actively pursuing the delay claim and by seeking an award of attorney's fees if it prevailed, was not merely a secured party assignee collecting a debt, but, rather, by its conduct, affirmatively assumed all the contractual liabilities of the Kraemer/Consolidated subcontract and was, indeed, vulnerable to both the counterclaim and the award of attorney's fees.

Because DeLozier is the primary Colorado case cited to us by both parties, we examine it in some detail. DeLozier involved an action by a general contractor (DeLozier) against the assignee (Farmers Acceptance Corporation "FAC") of DeLozier's subcontractor, who had failed to fulfill its contractual obligations. DeLozier sought payments DeLozier had made to FAC, but which FAC had not, in turn, paid to the company who supplied materials to the subcontractor. The Colorado Supreme Court began by announcing:

It is a general rule that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than did the assignor. The assignee is also subject to all the equities and defenses which could have been raised by the debtor against the assignor, with the exception of those claims and defenses which are both unrelated to the underlying contract and arise after the debtor is notified of the assignment.

DeLozier , 496 P.2d at 1018. The court noted that the word "claim" in section 318 "no doubt includes set-offs and counterclaims." DeLozier , 496 P.2d at 1018.

Citing § 4-9-317, the court then observed that "an assignee of contract rights is not subject to the contract or tort liabilities imposed by the contract on the assignor, in the absence of an assumption of such liabilities." Id. Applying those general principles to the particular facts of the case, the court held:

In instances such as this, where the assignee obtains money which the assignor could only retain upon performance of a contract, the following rule applies: "(W)here the assignor fails to perform the contract, the assignee cannot retain mistaken, or even negligent, payments made to it by the (debtor) unless there has been a subsequent change of position by the assignee."

Id. at 1018-19 (quoting Gilmore, The Assignee of Contract Rights and His Precarious Security , 74 Yale L.J. 217, 235 n.35 (1964-65)). After finding that FAC had not relied to its detriment on the payment made to it by DeLozier, the court held it could not retain the money so paid. Thus, in DeLozier , the court allowed an affirmative claim against the assignee, and allowed the recovery of payments made to the assignee, because the assignor had failed to fulfill its contractual obligations. The court did not, however, hold FAC, as assignee, liable

-11-

for any damages arising out of the subcontractor's contractual default other than the repayment of funds mistakenly paid to it.

As Curtiss Simmons acknowledges, DeLozier, and sections 9-318 and 9-317, have been subject to both narrow and more expansive interpretations. "Some courts interpret [section 9-318] narrowly, permitting an account debtor to assert a claim only as an affirmative defense and not as the basis for an independent claim against an assignee." Lydig Constr., Inc. v. Rainier Nat'l Bank, 697 P.2d 1019, 1020 (Wash. App. 1985) (citing cases). Other courts construe it more broadly to permit affirmative claims against assignees in certain situations. Id. at 1021 (citing cases).

Similarly, DeLozier has been interpreted both narrowly and expansively. Compare, e.g., Massey-Ferguson Credit Corp. v. Brown, 567 P.2d 440, 443 (Mont. 1977) (discussing DeLozier and noting that "[u]nder certain circumstances an assignee has been held to have impliedly assumed the contractual obligations of the assignor," and finding in the case before it that the "close relationship and participation between the assignor and assignee" rendered the assignee vulnerable to damages in counterclaim); and K Mart Corp. v. First Pa. Bank, 29 UCC Rep. Serv. 701 (Pa. Comm. Pl. 1980) (noting that DeLozier and another case "stand for the proposition that, in the appropriate circumstances, an assignee can be affirmatively required to return monies held by it as a result of mistaken or

-12-

negligent payment, as long as it has not changed its position adversely in reliance on the monies received," and further observing that "[t]his rule particularly applies when an assignee bears the greater responsibility for allowing improper overpayments to be made") with Michelin Tires (Canada) Ltd. v. First Nat'l Bank of Boston, 666 F.2d 673, 679 (1st Cir. 1981) (reading DeLozier and section 9-318 narrowly and stating "to the extent that DeLozier can be read to permit an affirmative suit against a lender who is completely unrelated to the underlying contract, we decline to follow this departure from traditional common law principles of restitution").

Further, as all parties acknowledge, neither DeLozier nor any other cases cited are factually similar to this case. And, while DeLozier recognizes the possibility that an assignee can assume "liabilities imposed by the contract on the assignor," 496 P.2d at 1018, it fails to further develop the ways in which an assignee could assume such liabilities, nor the scope of such liabilities, outside of the specific factual context of that case. Nor, however, does it imply that an assumption of such liabilities is only possible in the particular factual setting of that case. Thus, it could very well be that the DeLozier court would have concluded, were it presented to it, that Curtiss Simmons affirmatively assumed all contractual obligations by pursuing the delay claim and seeking an award of attorney's fees if it prevailed. Additionally, as the Michelin court observed in

-13-

analyzing section 9-318, "[t]he key statutory language is ambiguous." Michelin ,

666 F.2d at 677. In short, we do not discern a clear expression of Colorado law

on the issue of whether and how an assignee like Curtiss Simmons, in the

circumstances of this case, can become liable for, or be absolutely immune from

liability for, damages and attorney's fees arising out of a delay claim and a

counterclaim like those presented in this case.

In the absence of any such clear expression, we cannot conclude that the

arbitrators willfully disregarded applicable Colorado law. [5] Furthermore, as the

district court found, the arbitrators evidently made some crucial factual findings,

concluding that Kraemer's counterclaim against Curtiss Simmons was based upon

Curtiss Simmons' own conduct in the way it pursued the delay claim, not simply

upon its status as an assignee. Even if erroneous, that does not permit vacation of

the award. We therefore affirm the judgment of the district court enforcing the

arbitration award and denying Curtiss Simmons' motion to vacate it.

---

[5]Curtiss Simmons urges us to review various portions of the transcript of the proceedings before the arbitrators which, it argues, show that the arbitrators expressed a willingness to disregard the law as Curtiss Simmons' articulated it because of a perception that the result would be unfair. We have carefully read the entire transcript contained in the record on appeal, and we cannot discern any such willingness by the arbitrators. Rather, they carefully questioned each party as to their *arguments* about what the law required, and expressed a desire to make sure that they understood both the arguments of the parties and the law before they made their decision.

**II. Kraemer's Cross-Appeal**

As indicated, at the conclusion of the hearing before the district court, Kraemer sought attorney's fees it incurred in seeking enforcement of the award. The district court subsequently denied those fees. Kraemer appeals that denial.

Kraemer concedes that an award of fees incurred in obtaining enforcement of an arbitration award is discretionary. See United Steelworkers of Am. v. Ideal Cement Co., 762 F.2d 837, 843 (10th Cir. 1985) ("In an action to enforce an arbitration award, the allowance of attorney's fees is discretionary."); see also Fabricut, Inc. v. Tulsa Gen. Drivers, Local 523, 597 F.2d 227, 230 (10th Cir. 1979). We therefore review the court's denial of such fees for an abuse of discretion. We find no abuse of discretion in this case.

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-15-